IN RE APPEAL OF CLEMENTS.

(No. 27058—Decided May 20, 1965.)

Mr. *Stanley G. Webster* and Mr. *Donald K. Barclay*, for appellant-appellee Verona Clements.

Messrs. *Luikart & Luikart* and Mr. *Clarence C. Fowerbaugh*, for appellant Stanley H. Johnston.

Mr. *William T. Monroe*, director of law, for appellee city of Euclid.

CORRIGAN, J. We have before us an appeal on questions of law from a judgment rendered in the Court of Common Pleas of Cuyahoga County. The action of *In re Appeal of Verona Clements* was an appeal to the court below from the passage of Ordinance No. 48-1963 by the Council of the city of Euclid on March 4, 1963, wherein certain real property owned by appellant Stanley H. Johnston in Euclid, Ohio, was rezoned from U2 to U4 classification, and also Ordinance No. 49-1963, passed on the same day, which granted a variance so that such real estate owned by Johnston could be used for purposes of erecting a funeral home.

The appeal of Verona Clements to the Court of Common Pleas, case No. 779,742 therein, was tried together with case No. 780,496, *Benton Village One et al.* v. *City of Euclid et al.,* an action for declaratory judgment, injunction, and other relief. Even though the parties in the two cases were different, the issues were deemed similar enough to be tried together. All the evidence presented was to be considered in the determination of each of the two cases.

Separate journal entries were filed in the cases in the trial court and then separate appeals were taken to this court, the Benton Village case being numbered 27059. The appeals were heard together in this court and the briefs, documents and other papers, by agreement of counsel, are to be used interchangeably as far as the two appeals are concerned.

We are considering, in this opinion, only appeal No. 27058, the appeal in the case of Verona Clements.

Five of the six assignments of error relate to this appeal. They are as follows:

1. Error in failure to grant the defendant-appellant's motion to dismiss the appeal of Verona Clements on the basis that the court was without jurisdiction to hear the same, which mo-

tion was made at the beginning of the trial and repeated at its conclusion.

2. Error in the court's finding that it had jurisdiction to hear the appeal of Verona Clements.

4. That the decision, judgment and finding of the court in both cases are against the manifest weight of the evidence and are contrary to law.

5. That the evidence submitted in both cases is without sufficient proof to warrant the finding and judgment rendered by the court in each case.

6. Other errors manifest on the face of the record.

In connection with assignments of error one and two we will first consider Ordinance No. 48-1963 which rezoned the property in question from U2 to U4 classification. The ordinance reads as follows:

"S. E. corner of East 232nd Street                     (27)
and Lake Shore Blvd., S/L 1, 2, 3,
4, 5 & 6 in Neitzel's Blvd. Allotment - U2 to U4
S. H. Johnson [sic]

"Ordinance No. 48-1963

"By—Mr. Erickson (by request)

"An ordinance to amend Section 1 of Ordinance No. 2812, as amended, and the map and map designations, which map and map designations, as amended, form a part of said Ordinance No. 2812, as relates to and designates U2 and U4 use districts relative to certain property.

"Whereas, public notice and hearings have been given in connection with the changing of the U2 and U4 use districts relative to the hereinafter described property, as is established by Ordinance No. 2812, passed by the Council of the village of Euclid on the 13th day of November, 1922, which ordinance has from time to time been amended, and

"Whereas, the amendment of said Ordinance No. 2812 which pertains to the hereinafter described property, by transferring said property from U2 use district to U4 use district, has been referred to the City Planning and Zoning Commission by this council, and

"Whereas, the City Planning and Zoning Commission has considered such amendment and proposed change, which will add to the present U4 use district by the inclusion of the prop-

erty hereinafter described, and has filed its recommendation thereon, and

"Whereas, in the interest of the general welfare of the city of Euclid and in order to promote the general advantages of public peace, safety, morals, convenience and prosperity of the inhabitants of the city of Euclid, this council is of the opinion that the U4 use district should be extended so as to include the property hereinafter described:

"Now, therefore, be it ordained by the Council of the city of Euclid, state of Ohio:

"Situated in the city of Euclid, county of Cuyahoga and state of Ohio and known as being part of original Euclid Township Tract No. 19, bounded and described as follows:

"Beginning at a point in the southeasterly line of Lake Shore Boulevard, 80 feet wide, distant 419.12 feet northeasterly, measured along said southeasterly line, from the westerly line of land conveyed to Mary Ann Beck and Jacob G. Beck, by deed dated May 27, 1861 and recorded in volume 112, Page 34 of Cuyahoga County Records; thence southwesterly along the southeasterly line of Lake Shore Boulevard, 180.45 feet to the easterly line of East 232nd Street, proposed; thence southerly an included angle of 129°3'10" with the last described line and along the easterly line of East 232nd Street 215.76 feet, thence easterly at right angles to the last described line 134.19 feet; thence northerly 329.58 feet to the place of beginning, and being further known as Sublots Nos. 1, 2, 3, 4, 5 and 6 in the Neitzel's Boulevard Allotment, proposed, dated October 21, 1929, made by I. T. Stewart, civil engineer, be the same more or less, but subject to all legal highways;

"now designated by said Ordinance No. 2812, as amended, and by the map and map designations as now being included in the U2 use district, hereby is extended and added to, and is marked U4, so that said property shall be included in the U4 use district and shall be so marked upon the proper map and map designations of said Ordinance No. 2812, as amended; conditioned, however, upon (1) landscaping and screening in accordance with Ordinance No. 132-1961; (2) construction and maintenance of a twelve foot (12') buffer zone between the parking lot and adjoining property on the southerly line of said property; and (3) the owner of the above described property

filing with this council his acceptance of the conditions set forth hereinabove within ten (10) days after the passage of this ordinance.

"*Section 2*: That so much of Section 1 of Ordinance No. 2812, as amended, as relates to the U4 use district shall be extended to include the territory described in Section 1 of this amending ordinance.

"*Section 3*: That the map as adopted November 13, 1922, and as thereafter amended, is hereby amended to conform with the change of the property described in Section 1 of this ordinance from U2 use district to U4 use district.

"*Section 4*: That so much of Ordinance No. 2812, as amended, and the map designations as placed the above described property in U2 use district is hereby repealed.

"*Section 5*: That this ordinance shall be in full force and effect from and after the earliest period allowed by law.

"Attest:

"_____

   Clerk of Council            President of Council

"Passed: 3-4-63                 Approved:

                          _____

                            "Mayor"

The action of the Council of the city of Euclid, the legislative body of this city, in adopting this ordinance was unquestionably a legislative act, and the Administrative Appeals Act (Chapter 2506, Revised Code), providing for appeals from actions of administrative officers, tribunals and commissions, does not permit appeals from acts of legislative bodies. See *Remy* v. *Kimes*, 175 Ohio St. 197, and *Berg* v. *City of Struthers*, 176 Ohio St. 146.

The court below found, as stated in its journal entry, "that it has jurisdiction to hear this appeal from the action of the Euclid City Council, said council having approved the action of the Euclid Planning and Zoning Commission regarding said change in zoning."

In our opinion, the trial court was in error in this respect

and should have dismissed the appeal on motion of defendant Johnston as far as Ordinance No. 48-1963 was concerned.

We come now to a consideration of Ordinance No. 49-1963 which granted a variance to Johnston to enable him to construct an undertaking establishment on the property in question. Ordinance No. 49-1963 reads as follows:

"Ordinance No. 49-1963

"By - Mr. Erickson (by request)

"An ordinance establishing and permitting a variance in a U4 use district for a mortuary or undertaking establishment on property owned by Stanley H. Johnson [*sic*] and known as Sublots Nos. 1, 2, 3, 4, 5 and 6 in Neitzel's Boulevard Allotment, located at the southeast corner of East 232nd Street and Lake Shore Boulevard.

"Whereas, the owner of said property requested the City Planning and Zoning Commission to approve the construction of a mortuary or undertaking establishment thereon as a variance as set forth in Section 1591.01 of the Codified Ordinances of the city of Euclid, Ohio; and the proposals with respect to said mortuary or undertaking establishment were considered by the City Planning and Zoning Commission; and

"Whereas, the City Planning and Zoning Commission made a recommendation that the request for variance for the erection of a mortuary or undertaking establishment be granted.

"Now, Therefore, be it ordained by the Council of the city of Euclid, state of Ohio:

"*Section 1*: That this council, after public hearing, has determined that a variance be granted to Stanley H. Johnson [*sic*] to construct a mortuary or undertaking establishment on Sublots Nos. 1, 2, 3, 4, 5 and 6 in Neitzel's Boulevard Allotment, located at the southeast corner of East 232nd Street and Lake Shore Boulevard, subject to landscaping and screening as set forth in Ordinance No. 132-1961 and the construction and maintenance of a twelve foot buffer strip along the southerly line of the subject property.

"*Section 2*: That the subject property known as Sublots Nos. 1, 2, 3, 4, 5 & 6 in Neitzel's Boulevard Allotment, located at the southeast corner of East 232nd Street and Lake Shore Boulevard, shall be marked on the zoning map of Ordinance No 2812, as amended, as having said variance.

"*Section 3*: That this ordinance shall be in full force and effect from and after the earliest period allowed by law.

"Attest:

"_____          _____
    Clerk of Council                    President of Council

"Passed: 3-4-63                     Approved:

                                   _____
                                        "Mayor"

The city of Euclid has a planning and zoning code which is part of the bill of exceptions as plaintiff's exhibit number two, which we must examine to ascertain the authority upon which the city council relies for the passage of Ordinance No. 49-1963.

Section 1557.04 of such code, as it applies to U4 districts, prohibits the following uses:

"(a) * * *

"(b) Retail gasoline or oil stations, mortuary or undertaking establishment, and night club, tavern, hotel, restaurant or store where liquor, wine, beer or malt liquid is sold except pursuant to a variance granted by the City Planning and Zoning Commission. (Ord. 28-1957. Passed 1-28-57)"

Then in Section 1591.01, entitled "Variances Granted; Notice; Public Hearings," we find the following provisions:

"(a) The City Planning and Zoning Commission, subject to confirmation and approval of the council, may, after public notice and hearing and subject to such conditions and safeguards as the City Planning and Zoning Commission may establish, grant the following variances in a U4, U5 or U6 Use district.

"(1) Retail gas or oil station; * * *

"(2) Mortuary or undertaking establishment.

"* * *. (Ord. 4-1960. Passed 1-4-60)"

Let us at this point consider what is contemplated by the term "variance" in connection with zoning. A variance is an exemption in an individual case from the strict rule or literal enforcement of zoning provisions. A variance is intended to permit amelioration of the strict letter of the law in individual cases. Variances always relate to individual hardships peculiar

to the property for which a variance is sought. As stated in 8 McQuillin, Municipal Corporations (3rd Ed.) Section 25.160:

"* * * Each case of a variance or administrative exception in the nature thereof depends on its own facts. The fundamental purpose of variances is to afford a safety valve against individual hardships, to provide relief against unnecessary and unjust invasions of the right of private property, to provide a flexibility of procedure necessary to the protection of constitutional rights, and to keep the law 'running on an even keel.' Variances are to be authorized or permitted by zoning boards of adjustment, review or appeals when they are warranted or demanded by a state of facts. It must always be considered that variances are intended to deal with unique situations and are to be granted only under exceptional circumstances as a matter of grace within administrative discretion, usually subject to a standard or rule established by the zoning ordinance. * * *"

We face the question, therefore, of whether the city Council of Euclid, by reserving to itself the "confirmation and approval" of any action granting a variance by the City Planning and Zoning Commission and by passing Ordinance No. 49-1963 on March 4, 1963, giving Stanley H. Johnston a variance, was thereby engaging in a legislative function, or was such action purely administrative?

Analyzing this ordinance, it becomes apparent that the request of the owner of the property to the City Planning and Zoning Commission was to approve the construction of a mortuary as a variance at this location in a district zoned for U4 use. After its approval of the request was voted by the commission, a recommendation was made to the Euclid City Council that the variance be granted. In short, the Planning and Zoning Commission did not act in a legislative capacity whatsoever but exercised purely administrative and advisory powers and duties. Although the ordinance, codified as Section 1591.01, given in part above, recites that the commission "may * * * grant * * * variances" subject to confirmation and approval of council, it actually only approves and recommends to the council, and that legislative body does the granting of the variance.

This brings us squarely to the issue as to whether the legislative body, the council, in granting this variance, was fulfilling

a legislative function. If it was, then there can be no appeal to the Common Pleas Court from the passage of that ordinance, No. 49-1963, under Chapter 2506, Revised Code.

In the case of *L. & M. Investment Co.* v. *Cutler*, 125 Ohio St. 12, the Supreme Court considered the question of whether a zoning ordinance of the city of Cleveland, which gave to the Zoning Board of Appeals the power to grant a variance, was a delegation of legislative power within the purview of the Ohio Constitution. It was that court's opinion and decision, as stated in the syllabus, that, "Such zoning ordinance, by conferring upon said board as an administrative agency and as a fact-finding body the power of determining whether, in specific cases, practical difficulties or unnecessary hardships would result to the owner's zoned property, and, if so determined, the power to vary the strict application of the provisions of the zoning ordinance thereto, does not constitute a delegation of legislative power within the purview of the Constitution. * * *." Speaking for the court on page 18, Judge Jones quotes Judge Ranney, in *Cincinnati, W. & Z. Rd. Co.* v. *Commissioners of Clinton County*, 1 Ohio St. 77, at page 88, as follows: " 'The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made.' "

That opinion is valuable to us in the instant case because, while we are not concerned at this point with whether the ordinance, codified as Section 1591.01, contained standards for the guidance of the Euclid City Planning and Zoning Commission in granting a variance, *Investment Co.* v. *Cutler, supra*, definitely states that the function of granting such a variance is administrative and not legislative.

We find another case involving the classification of an act of a legislative body in granting a permit to erect a slaughter-house as an administrative rather than a legislative act in the case of *Russell Sage College* v. *City of Troy*, 24 Misc. 2d 344, 198 N. Y. S. 2d 391. The Common Council of the city of Troy by ordinance prohibited the erection of a slaughterhouse within certain wards of the city of Troy without the permission of the

Common Council for that purpose first had and obtained. A similar situation was presented in *City of Albany* v. *Newhof*, 230 App. Div. 687, 246 N. Y. S. 100, affirmed in 256 N. Y. 661, 177 N. E. 183, in which the Common Council enacted an ordinance similar to the Troy ordinance prohibiting the slaughtering of cattle within a described territory and reserved to itself the function of granting or refusing permission for any exception to such ordinance. Such permission in each of those two cases was declared expressly to be an administrative act.

Then we find another New York case, *Board of Education* v. *Town of Hempstead*, 202 N. Y. S. 2d 629, which holds that the granting of a variance by a zoning board of appeals is an administrative act, and a rezoning by the town board is a legislative act. Again, in the New York case of *Frantellizzi* v. *Herman*, 1 App. Div. 2d 980, 151 N. Y. S. 2d 396, the action of the town board in refusing application for exception was held discretionary and not legislative.

In another jurisdiction, we find that the granting of either conditional-use permit or variance permit is administrative or quasi-judicial rather than legislative, and hence may be accomplished by resolution rather than ordinance without violating charter provisions requiring all legislative power of the city to be exercised by ordinance. *Essick* v. *City of Los Angeles*, 34 Cal. 2d 614, 213 P. 2d 492.

There is a catholicity of authority in the reports on this question, and it seems unnecessary to present any further cases to support the principle that the granting of a variance is an administrative function whether it is by a zoning and planning commission or by the legislative body. In the light of the cases cited above, it is our conclusion and we therefore hold that the passage of Ordinance No. 49-1963 by the Council of the city of Euclid was an administrative act and not a legislative act. When this city council, by its enactment of the ordinance, codified as Section 1591.01, reserved to itself the confirmation or approval of a variance granted by the City Planning and Zoning Commission, it thereby sets itself up as the final municipal arbiter as to whether a variance shall be granted and, as such, is acting not as a legislative body but as a quasi-judicial body for that purpose, and is thereby performing strictly an administrative function.

Zoning boards of review in passing upon applications for variances or exceptions perform a quasi-judicial function. *Morin* v. *Zoning Board of Review of City of Warwick*, 89 R. I. 406, 153 A. 2d 149.

An application for a variance is made to the board of adjustment which is an administrative body sitting in a quasi-judicial capacity. *Abel* v. *Board of Works of City of Elizabeth*, 63 N. J. Super. 500, 164 A. 2d 764.

We conclude, therefore, that the appeal to the Common Pleas Court from the action of Euclid Council in passing Ordinance No. 49-1963 was proper, the court having jurisdiction in the matter, and therefore assignments of error numbers one and two are not well taken as far as Ordinance No. 49-1963 is concerned.

We will next consider assignment of error number six. This gives rise to the question whether the zoning ordinance, codified as Section 1591.01, under which the City Planning and Zoning Commission and the Euclid City Council acted in passing Ordinance No. 49-1963 is unconstitutional and invalid because of lack of sufficient criteria or standards therein to guide the tribunal in the exercise of the discretion vested in it.

It is basic in connection with zoning legislation that the grounds upon which variances are to be granted be specified in the ordinance. Still otherwise stated in 8 McQuillin, Municipal Corporations (3rd Ed.) Section 25.165:

"* * * the fundamental rule that ungoverned and unbridled discretion cannot be vested in either legislative or administrative bodies or officials, or in anyone, is applicable to variances; a uniform rule or standard to govern their grant or denial in all cases must be established by a zoning ordinance. Thus, a zoning ordinance that fails to establish a sufficiently adequate and definite guide to govern officials with respect to grant of variances, exceptions or permits is void. It has been said that varying applications of a zoning ordinance, to be valid, must be so defined and limited that both citizens and the zoning board may know with certainty their rights, privileges and powers under the ordinance. Indeed, unrestricted discretion as to what uses might be made of the properties in a community would not only be contrary to sound social policy but clearly unconstitutional. Accordingly, a legislative statement of the purposes

of zoning to govern the action of a zoning board does not suffice to validly guide or invest it with administrative power, where the statement is so broad and the discretion vested in the board is so wide that they are in effect not defined. * * *"

This correctly states a doctrine of zoning law relating to variances, and we follow it.

An ordinance such as the ordinance codified as Section 1591.01, which invests the City Planning and Zoning Commission and the city council with a discretion in the administrative matter of granting variances, that is purely arbitrary and that may be exercised in the interest of a favored few, is unreasonable and invalid. Under this ordinance a variance may be allowed to one person and not to another under exactly the same conditions at the discretion of these authorities.

Variances may not be granted by zoning commissions or legislative bodies except on grounds established by a zoning ordinance. The rule that ungoverned and unbridled discretion cannot be vested in either legislative or administrative bodies or officials, or in anyone, is applicable to variances; a uniform rule or standard to govern their grant or denial in all cases must be established by a zoning ordinance.

The city of Euclid ordinance, codified as Section 1591.01, violates the Fourteenth Amendment to the United States Constitution in failing to afford equal protection of the laws to persons affected by the ordinance. It is unconstitutional because the ordinance places it within the power of the council to grant or withhold permits in the exercise of its administrative powers according to its whim and fancy, thereby placing itself in position to display favoritism by granting its consent to one and refusing it to another under similar circumstances. See *McCauley* v. *Albert E. Briede & Son*, 231 La. 36, 90 So. 2d 78.

The Euclid ordinance, now codified as Section 1591.01, not only does not contain sufficient standards and criteria but it provides none at all. Paragraph one of the syllabus in the case of *State, ex rel. Selected Properties, Inc.,* v. *Gottfried*, 163 Ohio St. 469, which involved a request for the issuance of a variance permit for the erection of a gasoline station, reads:

"1. If a zoning ordinance of a municipality does not contain sufficient criteria or standards to guide the administrative

officer or tribunal in the exercise of the discretion vested in it, such enactment is unconstitutional and invalid."

In the majority opinion in that case the court quotes from 9 McQuillin, Municipal Corporations (3rd Ed.) Section 26.203, as "the following pertinent restatement of the fundamental principle here involved":

"Administrative power and discretion may be and usually are vested in designated departments, boards or officials or in the municipal legislative body itself to grant, deny or revoke building permits. However, the authority vested in them cannot be a power of arbitrary decision in each case, uncontrolled by any general rule but must be made subject to a standard or rule to operate uniformly in all cases. An ordinance conferring upon officials unrestricted discretion in the granting or refusal of building permits is a denial both of equal protection and due process of law. Certainly, an ordinance conferring arbitrary and despotic power in this respect is void. *Indeed, an ordinance cannot commit to the municipal legislative body itself, any more than to administrative officials, uncontrolled discretion as to permits for the erection of buildings and structures.* Nor does statutory or charter power to regulate the granting of permits authorize the delegation to an officer or committee of power to make restrictions and regulations." (Emphasis added.)

It is our holding, therefore, in the light of the above cases and principles, that the Euclid Ordinance codified as Section 1591.01 is unconstitutional and invalid, and that Euclid Ordinance No. 49-1963, passed purportedly under the authority of Section 1591.01, is therefore void and of no effect.

In view of our conclusion and decision in this respect, it is unnecessary that we pass on assignments of error numbers four and five.

The judgment of the Court of Common Pleas holding that it had jurisdiction to hear the appeal as regards Ordinance No. 48-1963 is reversed and this cause is remanded with instructions to dismiss the appeal of Verona Clements to the Common Pleas Court as far as Ordinance No. 48-1963 is concerned.

The judgment of the Court of Common Pleas holding that Ordinance No. 49-1963 is unconstitutional is affirmed for the reasons stated above.

The cause is remanded to the Common Pleas Court for the execution of this judgment.

*Judgment reversed in part and affirmed in part.*

KOVACHY, P. J., and SILBERT, J., concur.