Boxell et al., Appellants, *v.* Planning Commission of City of Maumee et al., Appellees.

[Cite as Boxell v. Planning Comm., 10 Ohio App. 2d 25.]

26

(No. 6175—Decided April 12, 1967.)

*Messrs. Boxell, Bebout, Torbet & Potter*, for appellants.
*Mr. Benjamin F. Marsh*, for appellees.

BROWN, J. This is an appeal on questions of law from a judgment of the Common Pleas Court of Lucas County, after a full hearing, dismissing the petition of plaintiffs, appellants herein, and rendering final judgment for defendants, appellees herein. The plaintiffs sought approval of a subdivision containing three lots, without plat, by the Maumee Planning

Commission, pursuant to Section 711.09 *et seq.*, Revised Code.

The petition of plaintiffs in effect was an appeal from the decision of the planning commission denying and refusing approval of plaintiffs' proposed subdivision or proposed division of a parcel of land, constituting a split of one lot into three lots, without plat, filed pursuant to Sections 711.09 and 711.131, Revised Code, and sought approval of the subdivision without plat. The proposed subdivision fronts on River Road for a width of 184.62 feet and a depth, extending to the Maumee River, of over 900 feet on the west side and over 700 feet on the east side. The proposed split of one lot into three would result in two lots each 80 feet wide, all fronting on River Road with a depth of 170 feet each. A third lot would result in a frontage of 24.62 feet on River Road, forming a neck that width on the easterly side of one of the proposed smaller lots and would embrace the rest of the area of the original lot before its proposed division extending southerly to the Maumee River.

The pertinent part of Sections 711.09 and 711.131, Revised Code, are here stated. Section 711.131 provides in part:

"Notwithstanding the provisions of Sections 711.001 to 711.13, inclusive, of the Revised Code, a proposed division of a parcel of land along an existing public street, not involving the opening, widening or extension of any street or road, and involving no more than five lots after the original tract has been completely subdivided, may be submitted to the authority having approving jurisdiction of plats under the provisions of Sections 711.05, 711.09, or 711.10 of the Revised Code for approval without plat. * * *"

The parts pertinent to the procedure incident to obtaining approval of a proposed division without plat are contained in Section 711.09, as follows:

"* * * Within sixty days after such refusal, the person submitting any plat which the commission * * * refuses to approve may file a petition in the Court of Common Pleas of the proper county, in which he shall be named *plaintiff*. The *petition* shall contain a copy of the plat sought to be recorded, *a statement of the facts justifying the propriety and reasonableness of the proposed subdivision,* and a prayer for an order directed to the recorder to record such plat and may include a statement of facts to support a claim that the *rules* of the

planning authority under which it refused to approve such plat are unreasonable or unlawful. The planning authority refusing to approve such plat and the recorder of the county shall be joined as *defendants* and summons shall be issued upon such *defendants as in civil actions. Within the rule day provided for a civil action* the planning authority may file an *answer* in which it may set forth *a statement of the facts justifying its refusal to approve such a plat*, a copy of its rule or regulation under which it refused to approve such plat, and a statement of the facts supporting the reasonableness and lawfulness of such *rule* or regulation. The court shall hear the matter upon such evidence as is introduced by either party and the planning authority may introduce as a part of its case a complete transcript of any proceedings had before it. * * * If the court finds that the prayer for the recording of such plat * * * is supported by a preponderance of the evidence, it shall enter an order directed to the recorder to record such plat as originally submitted * * *. Otherwise, the petition shall be dismissed. The court *shall* return a separate finding upon the *reasonableness and lawfulness of the refusal* to approve the plat or upon the *reasonableness and lawfulness of the rule or regulation* under which the planning authority refused to approve the same or both, as the case may require. The judgment or order of the court may be appealed by either party on questions of law *as in other civil cases.*'' (Emphasis added.)

As the appellants have raised many points of procedure, with particular emphasis on the failure of the Common Pleas Court to ''return a separate finding upon the reasonableness and lawfulness of the refusal to approve'' the proposed division without plat, and cite the separate finding of fact that ''the court further finds that from the evidence introduced that the plaintiffs have failed to sustain the burden of proof that said denial (by the planning commission) was illegal, arbitrary or capricious,'' a critical analysis of the procedure to be followed under the provisions of Section 711.09, Revised Code, must be made.

It is obvious from the foregoing quotation that, though the action in the Common Pleas Court may accomplish the purposes of an appeal from the decision of the planning commission, it nevertheless is a separate and independent civil action in which the issues must be joined, trial had, and evidence submitted

by the parties on the issues so joined. The plaintiff, to prevail, must prove his case by a preponderance of the evidence, and, when the validity of a rule is not in issue, that consists of proving by a preponderance of the evidence "the facts justifying the propriety and reasonableness of the proposed subdivision." The plaintiff has no burden of proving, as was found by the Common Pleas Court in relation to the plaintiffs here, that the denial by the planning commission "was illegal, arbitrary or capricious." The Common Pleas Court was in error in so finding.

The Common Pleas Court committed further error in failing to return a separate finding, as prescribed by statute, "upon the reasonableness and lawfulness of the refusal to approve the plat." We may not presume that such a finding is implicit in its judgment dismissing plaintiffs' petition, for such judgment was entered on a specific finding "that the plaintiffs have not sustained their burden of proof."

Upon appeal to this court, we are then governed by the same rules of law applicable to the appeal of any other civil action on questions of law and may reverse only for prejudicial error committed by the Common Pleas Court. In the event that it has made the prescribed "separate finding upon the reasonableness and lawfulness of the refusal to approve" the division, we may not conclude as to such issue other than did the Common Pleas Court and enter final judgment, unless our conclusion is made as a matter of law. Nor may we arrive at an independent and final determination on whether the plaintiffs have proved the prayer of their petition by a preponderance of the evidence unless we likewise do so as a matter of law. If we cannot arrive at these conclusions as a matter of law, we must remand the cause to the Common Pleas Court for new trial by reason of the errors aforementioned, which were prejudicial to the plaintiffs.

The evidence is undisputed as to the character of the division proposed by the plaintiffs and is undisputed as to the ordinances which may be applicable. There is left to this court merely an interpretation of these ordinances as applied to the undisputed facts, which, of course, involves merely questions of law.

A portion of Section 14, paragraph 1, of Zoning Ordinance No. 29-1958, reads as follows (with emphasis added):

"Any building hereafter erected, enlarged, relocated or rebuilt in any of the following districts shall have *minimum yard dimensions* and shall be built on a lot having *minimum width at the building line* as required by the following schedule:

| "Use District | Lot width | Minimum Yard Dimensions | | |
|---|---|---|---|---|
| | | Front | Side | Rear |
| "R-1 Residence | 80 | 35 | 10% | 40" |

This zoning ordinance must be considered because Subdivision Ordinance No. 8-1959, pertaining to the approval without plat of subdivisions which "do not result in lots with less than the minimum requirements of the zoning ordinance for such area," also requires the disapproval thereof "if it does not meet the minimum requirements of the ordinance and of the appropriate zoning ordinance or is in conflict with the official plan."

In construing Section 14 of Ordinance No. 29-1958, it is important to remember that statutes or ordinances which impose restrictions upon the use of private property will be strictly construed and their scope cannot be extended to include limitations not therein clearly prescribed. *State, ex rel. Spiccia,* v. *Abate, Bldg. Commr.,* 2 Ohio St. 2d 129, and authorities therein cited. It will be first observed that the quoted portion of Section 14 of Ordinance No. 29-1958 is a zoning ordinance pertaining to the construction of buildings in R-1 residence districts and would not ordinarily be violated by the mere subdivision of land. Violation could occur only if a building were constructed not meeting the requirements of the ordinance or, in some cases, of subdivision, where the subdivision would result in a lot or lots where it would be impossible to build without violating the provisions of the ordinance. "The building line" therein referred to is not synonymous with set-back line or minimum yard dimensions. In ordinary sense it would be a line parallel to the front lot line, adjacent to, abutting, and *established by*, the building proposed to be erected, and in front of which no part of that building projects, except those projections into yards specifically permitted by the zoning ordinance. If at this line the lot is at least 80 feet in width the proposed construction meets the requirements of the ordinance as to the location of the building on the lot, if at the same time the front yard is at least 35 feet in depth, the rear yard is at least 40 feet in depth, and the side yards are at least 10 per cent in width.

Any other construction of this ordinance would result in extending the scope of the ordinance to include limitations not therein clearly prescribed. *State, ex rel. Spiccia,* v. *Abate, Bldg. Commr.,* 2 Ohio St. 2d 129. It should also be noted that the construction of the ordinance called for by the dissenting opinion would permit a building to be constructed at the rear of a lot even though at the location of construction the lot is much less than 80 feet in width, so long as the lot is 80 feet in width at a point 35 feet from its front line. The city council clearly intended that buildings could be built only on lots which were 80 or more feet in width at the location of the construction.

Moreover, section 14 of the zoning ordinance begins with the phrase "any building hereafter erected." Plaintiffs' proposed subdivision contains no evidence of any building to be hereafter erected in violation of section 14 of the zoning ordinance and, in fact, does not indicate any intention to erect any building of any kind on any of the three lots proposed. Section 14 is solely a restriction on the yard dimensions surrounding buildings concerning "any building hereafter erected" and not a restriction on a proposed subdivision of land pursuant to the subdivision regulations of the city of Maumee.

If, in accordance with Section 711.09, Revised Code, plaintiffs proved by a preponderance of the evidence that their proposed subdivision without plat was reasonable and proper, the Common Pleas Court had a mandate to order the planning commission to approve such subdivision.

To state this proposition in another form, if the plaintiffs' proposed subdivision without plat was not contrary to the subdivision ordinance and zoning ordinance of the city of Maumee, and not contrary to any state statutes, and full compliance was shown by plaintiffs with such ordinances and statutes, it was then unreasonable and unlawful for the Planning Commission of Maumee to disapprove the subdivision without plat. Upon such full compliance with the ordinances and statutes, as a matter of law the Common Pleas Court should have found the proposed subdivision to be reasonable and proper and that the refusal of the planning commission to approve the proposed subdivision without plat was unreasonable and unlawful.

*Villa-Laken Corp.* v. *Planning Board,* 138 N. Y. Supp. 2d 362, provides in paragraph three of the headnotes:

"Resolution of town planning board disapproving peti-

tioner's proposed subdivision plan was capricious and arbitrary and would be reversed, where there had been complete compliance with regulations with respect thereto, and where it appeared that alleged prior agreement of predecessor of petitioner not to erect any further structures in the area for 20 years, on which present disapproval was based, was executed by predecessor at instance of town board as condition in order to obtain their approval as to rest of predecessor's subdivision.''

*In re Appeal of Clements*, 2 Ohio App. 2d 201, paragraph three of the syllabus and at page 211; 58 Ohio Jurisprudence 2d 605-606.

In *In re Appeal of Clements*, 2 Ohio App. 2d 201, the court stated, at page 211:

''It is basic in connection with zoning legislation that the grounds upon which variances are to be granted be *specified* in the ordinance. * * * the fundamental rule that *ungoverned* and *unbridled* discretion cannot be vested in either legislative or administrative bodies or officials, or in anyone, is applicable to variances; a *uniform rule* or *standard* to govern their grant or denial in all cases must be established by a zoning ordinance. * * *'' (Emphasis added.)

Paragraph three of the syllabus of the *Clements case* states:

''A city ordinance is unconstitutional and invalid, which purports to give to a municipal body, legislative or administrative, the power to grant a variance in a certain zone use district where *no standards* or *criteria* to uniformly guide the body in the granting of a variance are contained therein.'' (Emphasis added.)

Although we are not concerned with the granting of a variance under a zoning ordinance, the reasoning of the *Clements case* is applicable to the action of the administrative body in this case, the Planning Commission of Maumee, when it considered whether it should refuse approval of plaintiffs' subdivision without plat. It could not proceed with unbridled and ungoverned discretion, and, in determining propriety, reasonableness or lawfulness of the proposed subdivision, was confined to a determination whether the plaintiffs complied in every respect with the ordinances of Maumee and the statutes of Ohio and could consider nothing further. This conclusion is further fortified by the following part of Section 711.131, as follows:

''* * * If such authority acting through a properly desig-

nated representative thereof is satisfied that such proposed division is not contrary to applicable *platting, subdividing,* or *zoning regulations* it shall within seven working days after submission approve such proposed division and, on presentation of a conveyance of said parcel, shall stamp the same 'approved by (planning authority); no plat required' and have it signed by its clerk, secretary, or other official as may be designated by it. Such planning authority may require the submission of a sketch and such other information as is pertinent to its determination hereunder." (Emphasis added.)

By the Charter of the city of Maumee, the Municipal Planning Commission has no powers beyond that conferred and prescribed by state statute and Maumee's ordinances, concerning platting or otherwise, by reason of Section 7 (b) of the Maumee City Charter.[1]

Section 5, subdivision ordinance, approval of subdivision without plat,[2] fortifies the foregoing conclusion. It requires the planning commission to disapprove only when the proposed subdivision does not meet the subdivision and zoning ordinance requirements or the official plan. This implies exclusion of any other reasons for disapproval of the proposed subdivision.

Thus, besides the reasoning of the cases of *Villa-Laken Corp.* v. *Planning Board,* 138 N. Y. Supp. 2d 362, and *In re Appeal of Clements,* 2 Ohio App. 2d 201, applicable to the action of the planning commission in the case at bar, we have a statutory mandate as well as a municipal legislative mandate requiring the planning commission to approve the subdivision without plat, if it is not contrary to any platting, subdivision or zoning regulations. An effort was made by the planning com-

---

[1]Section 7 (b) of the Maumee City Charter. "The Municipal Planning Commission shall have such powers and duties as shall be conferred upon it by ordinance of the council and the laws of Ohio concerning * * * the approval of plats for the subdivision of land; * * *."

[2]Section 5. Approval without Plat. "1. A subdivision along an existing public street which (a.) contains no more than five lots of an existing recorded plat, and * * * (c.) does not result in lots with less than the minimum requirements of the zoning ordinance for such area, may be submitted to the Secretary of the Planning Commission for review by the Service Director on behalf of the Planning Commission without requiring a plat. 2. * * * Such subdivision shall be disapproved if it does not meet the minimum requirements of the ordinance and the appropriate zoning ordinance or is in conflict with the official plan. * * *"

mission to show that the plaintiffs did not comply with the various provisions of the subdivision and zoning regulations. We will consider these provisions with which there was a claimed noncompliance.

The proposed subdivision of plaintiffs complies with the definition of a subdivision as is contained in Subdivision Ordinance No. 8-1959 of the city of Maumee, Section 2.[3]

The proposed three lots in the subdivision proposed by the plaintiffs comply with the minimum lot size of 12,000 square feet as required by Subdivision Ordinance No. 8-1959, Section 4, paragraph 6, Subdivision Regulations,[4] and, also, concerning the requirement that all lots abut on a public street, comply with sidelines requirements.[5] The three lots in the proposed subdivision of plaintiffs also have their principal frontage[6] upon a street, and, consequently, there is complete compliance with Section 2, subparagraph 23 of Zoning Ordinance No. 29-1958 which contains the frontage requirements. Each of the three lots had its principal frontage on River Road. The larger lot has a frontage of 24.62 feet on River Road and has no other frontage anywhere.

The proposed three lots also comply with the minimum lot area per family as required by Section 12, subparagraph 1 of

[3]Subdivision Regulations, Ordinance No. 8-1959, Section 2, Definitions. *Subdivision.* "(a) The division of any parcel of land shown as a unit or as contiguous units on the last preceding tax roll into two or more parcels, sites or lots, any one of which is less than five acres, for the purpose, whether immediate or future, of transfer of ownership, or * * *."

[4]Subdivision Regulations, Section 4, paragraph 6, *Lots.* "The minimum dimensions and other characteristics of lots intended for residential use shall be as follows: * * * c. A minimum lot size of 12,000 square feet shall be provided when public water is available but sanitary sewers are not provided. * * * e. In no case shall a lot have a width at the building line of less than 60 feet or a lot area of less than 7,500 square feet, and generally the depth-to-width ratio shall be at a maximum of 3.5 to 1. * * *."

[5]Subdivision Regulations, Section 4, paragraph 6(1). "All lots shall abut on a public street *or* on a permanently reserved private place approved by the Planning Commission as the principal means of access to abutting property." (Emphasis added.)

[6]Zoning Ordinance 29-1958, Section 2, Definitions, *Frontage.* "All the property on one side of a street between two intersecting streets (crossing or terminating), *measured along the line of the street,* or if the street is dead ended, then all the property abutting on one side between an intersecting street and the dead end of the street." (Emphasis added.)

Zoning Ordinance 29-1958, wherein 12,000 square feet are required per family.

The defendants contend that the plaintiffs' proposed subdivision of three lots conflicts with the set-back requirements of buildings as contained in Zoning Ordinance, Section 14, subparagraph 5, as amended by Zoning Ordinance, No. 60-1964.[7]

It is true that, if this set-back section of the zoning ordinance is applicable to the plaintiffs, the two smaller lots in the plaintiffs' proposed subdivision could not have any buildings erected thereon unless those buildings would project beyond the average front yard set-back line so established, and, therefore, there would be a violation of this section of the zoning ordinance. The average front yard set-back line established was approximately 178 feet. The depth of the two smaller lots is only 180 feet. However, the set-back provision of the zoning ordinance does not apply in this case because the proposed subdivision of the plaintiffs does not front on a street *between two intersecting streets.* The foregoing section 14, governing set-back lines, is applicable only when the proposed subdivision is on one side of the street between two intersecting streets.

To the west of the proposed subdivision of plaintiffs, which is on the south side of River Road, is an intersecting street known as Manitou Drive. To the east of the real estate of plaintiffs on River Road there is no intersecting street, and the Maumee corporation limits is then reached where the only thing which could be construed as an intersecting street is the Ohio Turnpike, which proceeds across River Road by way of an underpass crossing. Neither the Maumee corporation limits nor the Ohio Turnpike may be construed as an intersecting street so as to create a situation where the property of the plaintiffs is between two intersecting streets. Therefore, the only intersecting street near the proposed subdivision of the plaintiffs is Manitou Drive which is on the west side

---

[7]Zoning Ordinance No. 60-1964, Section 14, paragraph 5. "When forty percent or more of the frontage of one side of the street between two intersecting streets is improved with buildings that have a front yard that is greater or less than the required front yard in the district, *no new or reconstructed building* shall project beyond the average front yard so established." (Emphasis added.)

thereof, and there is no intersecting street east of the proposed subdivision of the plaintiffs. To construe the Ohio Turnpike as an intersection is in conflict with the well understood meaning of the words, "intersecting streets." *Intersect* means to cut into or between, 22 Words and Phrases 390; *Trull v. Ratner*, 337 Ill. App. 45, 84 N. E. 2d 843. The word *intersect* means to pierce or divide by passing through or athwart; cut across; cross; as any two diameters of a circle intersect each other. *Clark v. Riehl*, 313 Ky. 142, 230 S. W. 2d 626, at page 628; *Connors v. Dobbs*, 77 Ohio App. 247. See also 74 Corpus Juris Secundum 583, Section 140, What Constitutes a Crossing. The above conclusions are buttressed by the definition of "street" in the zoning and subdivision ordinances.[8]

Subdivision Ordinance No. 8-1959, Section 4, subparagraph 6 (g),[9] concerning a larger lot size than the minimum in particular cases in order to meet desirable requirements for the subdivided area, places ungoverned and unbridled discretion in the planning commission and runs headlong into the fundamental rule condemning such unbridled discretion, as previously discussed in the case of *In re Appeal of Clements*, 2 Ohio App. 2d 201, at page 211, *supra*. If such discretion as suggested in the foregoing section of the subdivision ordinance were exercised without any limitation, it would give power to the planning commission always to require the lot size to be so large that it would be impossible ever for any property owner to obtain approval of a proposed subdivision. It has no standards or criteria to guide the planning commission in determining when a larger lot size should exist. Furthermore, the last phrase, "for the subdivided area," means that the surrounding topography is to be considered only as it refers to the subdivided area of the plaintiffs, and does not refer to the topography and

---

[8]Zoning Ordinance, Section 2, paragraph 13. *Street.* "A public thoroughfare which affords the principal means of access to abutting property."

Subdivision Ordinance, Section 2, Definitions. *Street.* "A right-of-way, dedicated to public use, which provides vehicular and pedestrian access to adjacent properties."

[9]Subdivision Ordinance No. 8-1959, Section 4, paragraph 6(g). "All lots shall be designed to provide desirable building sites, properly related to topography, high water levels and surrounding streets, railroads, water courses and land use. A larger lot size than set out in Paragraph a. to e. inclusive may be required in particular cases in order to meet the desirable requirements *for the subdivided area.*" (Emphasis added.)

surrounding circumstances beyond the subdivided area of the plaintiffs. It does not refer, for example, to the rest of Maumee or to other property on River Road.

Further, the planning commission transcript of proceedings and the record of proceedings in the Common Pleas Court are completely devoid of any evidence showing that the planning commission took any action to require plaintiffs' proposed subdivision to contain lots larger in size than set out in paragraph 6, subparagraphs a. to e., Section 4, Subdivision Ordinance 8-1959, or that the planning commission took any action to determine that the lots in plaintiffs' proposed subdivision were not designed to provide desirable building sites, properly related to topography, high water levels and surrounding streets, railroads, water courses and land use. Therefore, section 4, paragraph 6 (g) of the subdivision ordinance is inapplicable to this case. The same is true concerning the official plan described in Section 5, paragraph 2 and Section 2 of the Subdivision Ordinance No. 8-1959.[10] It is significant that the city solicitor in his letter dated September 28, 1964, advising the planning commission concerning the unlawfulness of the proposed splits, did not mention then or at any other time the foregoing official plan provision, or section 4, paragraph 6 (g) of the subdivision ordinance, as an obstacle to approval of the subdivision without plat. Neither did the planning commission refer to any such obstacle at the hearings below.

Defendants argue that the proposed subdivision, particularly the two smaller lots, conflicts with the official plan as set forth in section 5 of the subdivision ordinance, as official plan is defined in section 2 thereof, and for that reason the proposed subdivision was lawfully and reasonably disapproved. There is nothing in the record to show any conflict with the official plan by the plaintiffs' proposed subdivision. Further, there is no evidence to show that there is any official plan of any kind, unless it means a combination of the Subdivision and Zoning Ordinances of the city of Maumee.

It is evident from the transcript of the proceedings before the planning commission and the record of the proceedings in the Common Pleas Court that the principal reason the plan-

---

[10]Subdivision Ordinance 8-1959, Section 2. *Official Plan.* "A plan or plans adopted by the Planning Commission of the city of Maumee * * * or within the territory within three miles of such corporate limits."

ning commission disapproved plaintiffs' proposed subdivision without plat was because approval thereof would change the character of the neighborhood and change the value of the real estate in the area. Such reasons could in no way serve as a reasonable and lawful refusal to approve the plaintiffs' subdivision.

We conclude, on the undisputed facts and as a mater of law, that the subdivision proposed by the plaintiffs was proper and reasonable, and that this court should render the judgment the Common Pleas Court should have rendered finding that the prayer of the petition is supported by all the evidence, separately finding that the refusal of the planning commission to approve the proposed division without plat was neither reasonable nor lawful, and ordering the planning commission to approve the proposed division in the manner and for the purposes set forth in Section 711.131, Revised Code.

*Judgment reversed.*

GUERNSEY, J., concurs.

RUTHERFORD, J., dissenting: I agree with the statement in the fourth paragraph of the syllabus that if plaintiffs' proposed division of a parcel of land without plat is not contrary to applicable subdivision, platting and zoning ordinance of the city where the land is situated, and not contrary to any state statutes, it is then mandatory for the planning commission, acting pursuant to Sections 711.09 and 711.131, Revised Code, to find the proposed division of land reasonable and proper and to approve such proposed division of land.

However, as stated in the majority opinion, Subdivision Ordinance No. 8-1959, Section 5 (parts 1 [C] and 2), pertaining to the approval without plat of subdivisions, requires the disapproval thereof, ''if it does not meet the minimum requirements of the ordinance and the appropriate zoning ordinance or is in conflict with the official plan.'' Likewise Section 711.131, Revised Code, requires disapproval of a proposed subdivision which is contrary to applicable platting, subdividing or zoning regulations.

I agree that if we cannot reach a conclusion as a matter of law we must remand the cause to the Common Pleas Court for a new trial, by reason of the errors mentioned in the majority opinion.

The following sketch drawn to an approximate scale shows Lot 6 owned by plaintiffs, appellants herein, with the requested subdivision sketched thereon. It also shows the location of River Road and the approximate locations of Manitou Drive, the Maumee River, the Ohio Turnpike and the corporation line.

Does the proposed subdivision without plat meet minimum requirements of the subdivision ordinance, appropriate zoning ordinance and official plan as a matter of law, or, under Subdivision Ordinance No. 8-1959, Section 5 (2), and Section 711.-131, Revised Code, must such proposed subdivision be disapproved because it does not meet the minimum requirements of the ordinance and of the appropriate zoning ordinance or is in conflict with the official plan as a matter of law? The property in question is located in an R-1 residence district.

The pertinent parts of Section 14, paragraph 1, of Zoning Ordinance No. 29-1958, read as follows (emphasis added):

"Any building hereafter erected, enlarged, relocated or rebuilt in any of the following districts shall have minimum yard dimensions and shall be built *on a lot having minimum width at the building line as required* by the following schedule:

| "Use District | Lot Width | Minimum Yard Dimensions | | |
|---|---|---|---|---|
| | | Front | Side | Rear |
| "R-1 Residence | 80 | 35 | 10%[1] | 40" |

In this portion of the ordinance, my colleagues have chosen to emphasize "minimum yard dimensions" and "minimum width at the building line." I agree that there are two parts to the paragraph, but I understand them to be:

1. "minimum yard dimensions" and

2. "* * * *on a lot having minimum width at the building line as required by the following schedule.*" (Emphasis added.)

From the ordinance, it is clear that the minimum lot width is 80 feet. If this requires a uniform minimum width of 80 feet there can be no question that the proposed lot which has a width of only 24.62 feet for a distance of 170 feet from River Road is in conflict with the ordinance as a matter of law.

If a uniform minimum width of 80 feet is not required, at what point must the lot be 80 feet wide to have a minimum width *as required by the schedule?*

The ordinance provides that the lot must have a minimum width of 80 feet *at the building line as required* and it seems clear to me that the only line as required is that determined

---

[1] "Side yard distance shall be computed by applying the above percentage to the lot width at the point in question, but in no case shall the same be less than five (5) feet."

by the minimum set-back requirement of 35 feet from River Road. Any building line at a point farther back would be permissive but not required. I agree that this interpretation would require a minimum width only at the building line as required by the 35 foot set-back and would permit a lot of less than 80 feet minimum width at other points, but this is clearly contemplated by the ordinance, and the majority opinion which would require a minimum width of 80 feet only at the chosen building line which is a permitted location but not required is untenable, for such an interpretation is in conflict with the very provisions of the section being construed for reasons hereinafter pointed out.

Paragraph five of the syllabus prepared in accordance with the majority opinion reads in part.:

" 'Building line' in such zoning ordinance is not synonymous with set-back line or minimum yard dimensions, but is a line parallel to the front lot line, established by the building proposed to be erected; and if, at this building line, the lot has the minimum width, or more, prescribed by the zoning ordinance, compliance therewith exists."

If this is the line at which the minimum width must be 80 feet, then, 10 per cent of 80 being 8, a minimum side yard of 8 feet would always be required and the provision of the ordinance requiring 10 per cent *but in no case less than 5 feet*, has been repealed by legislative action of the court. Because of this provision in the ordinance, I cannot concur in the statement made in the majority opinion that "the city council clearly intended that buildings could be built only on lots which were 80 or more feet in width at the location of the construction."

From the provisions of the ordinance, it seems clear that at the location of construction a lot width of less than 80 feet and a side yard of less than 8 feet are permissible, provided the lot has a minimum width of 80 feet *at the building line as required*, which *required line* is synonymous with the set-back line.

Paragraph five of the syllabus further provides in part:

"A zoning ordinance which specifies minimum front, side and rear dimensions for 'any building hereafter erected' is not violated by a mere proposed division of land without plat, sub-

mitted to a planning commission for approval, which makes no reference whatever to any building of any kind proposed to be erected.''

It is my opinion that in the absence of indication in the application that the proposed subdivision is to be used for a limited purpose, the planning commission need not so construe it. However, there is a residence on the larger of the lots, which now meets all requirements of the ordinances and plans and does not exist as a nonconforming use. If the proposed subdivision is approved, the existing house would hereafter stand on a lot not in compliance and will be rendered a nonconforming use under conditions not existent prior to enactment of the ordinance. Conditions of nonconformance must have existed prior to enactment of the ordinance in order to be permitted to continue. I fail to see how it makes any difference whether noncompliance be brought about by change in the building or change in the lot upon which it stands.

Zoning Ordinance No. 29-1958, as amended by Ordinance No. 60-1964, further provides:

''Section 5

''When forty (40) per cent or more of the frontage on one side of the street between two intersecting streets is improved with buildings that have a front yard that is greater or less than the required front yard in the district, no new or reconstructed building shall project beyond the average front yard so established.''

The purpose of that section is to establish an alternate requirement when the average set-back so determined is more or less than the 35 feet set-back otherwise required. In the instant case, such average set-back if the turnpike were an intersecting street would be 178 feet, and the depth of the two smaller lots as proposed is only 170 feet. As stated in the majority opinion:

''It is true that, if this set-back section of the zoning ordinance is applicable to the plaintiffs, the two smaller lots in the plaintiffs' proposed subdivision could not have any buildings erected thereon unless those buildings would project beyond the average front yard set-back line so established, and, therefore, there would be a violation of this section of the zoning ordinance.''

The section, however, was found not to be applicable, for failure to qualify as frontage between two intersecting streets based upon a determination that the Ohio Turnpike is a crossover at River Road but not an intersecting street within the meaning of the ordinance.

Whether the width of the lot as required is a uniform minimum width of 80 feet, or a requirement either at the 35 foot required set-back line or the 178 foot set-back line, the proposed subdivision is in conflict, and, as provided by Subdivision Ordinance No. 8-1959, Section 5 (2), *supra*, and Sections 711.131 and 711.09, Revised Code, such proposed subdivision must be disapproved. The regulation is reasonable and lawful, as was the refusal of the planning commission to approve. The proposed subdivision is contrary to applicable subdivision and zoning regulations as a matter of law.

Had the owners in their application requested that the strip 24.62 feet wide by 170 feet long be approved under the ordinance as a private place and then asked that the parcel to the rear, being 184.62 feet wide, be considered as having its principal frontage upon an approved place, they would have given rise to another issue as to which I have made no determination, since there was never any request to approve the 24.62 foot-wide strip as a place.

The judgment of the Common Pleas Court and decision of the planning commission ought to be affirmed.

GUERNSEY, J., of the Third Appellate District, and RUTHERFORD, J., of the Fifth Appellate District, sitting by designation in the Sixth Appellate District.