HAUGHT ET AL., APPELLANTS, *v.* CITY OF DAYTON ET AL., APPELLEES.

134

(No. 3949—Decided May 2, 1972.)

*Mr. R. A. Skilken, Jr.*, for appellants.

*Mr. James W. Drake*, city attorney, *Mr. H. Donald Hawkins, Mr. James F. Bauhof* and *Mr. William Patrick McGuinn*, for appellees.

CRAWFORD, J. A concise factual summary of this case is presented in the document entitled "Statement of Case in Lieu of Transcript" and is as follows:

"On or about February 17, 1972, Robert Haught and nine other plaintiffs in this action, along with persons not parties to this action, all of whom are employed by The City of Dayton, Department of Fire, in the classification of Firefighter, received a notice from the Civil Service Board entitled 'Employment Status Change Resulting from Reduction in Force,' which notice advised Plaintiffs and said other persons that they were to be laid off from their jobs as of the end of their shift on February 25, 1972. The reason for such lay off was that The City of Dayton no longer had the funds with which to continue to employ the plaintiffs in the classification of Firefighter. Plaintiffs were also advised that they would be eligible to be re-employed by the City after a period of 30 days unemployment from their City jobs under the provisions of the Emergency Employment Act of 1971.

"At the time the ten plaintiffs and five other Department of Fire employees in the classification of Firefighter were to be laid off on February 25, 1972, there would be 52 employees in the Department of Fire retained in the classification of Firefighter EEA whose total length of City service was less than Plaintiffs. The 52 employees in the classification of Firefighters EEA had previously been employed in the classification of Firefighter, but were laid

off because of insufficient funds. Before this suit was filed, said 52 employees were re-employed in the Department of Fire in the classification of Firefighter EEA after a period of 30 days of unemployment from their City jobs, and were paid with funds received by the City under the Emergency Employment Act of 1971.

"The plaintiffs upon learning that they were to be laid off, while said 52 employees in the classification of Firefighters EEA were to be retained by the City of Dayton during the 30-day qualifying period of unemployment from their City jobs as required of plaintiffs under the provisions of the Emergency Employment Act, filed suit in the Common Pleas Court requesting a temporary and permanent injunction enjoining The City of Dayton from unlawfully interfering with the Plaintiffs' employment rights and laying the Plaintiffs off while other Fire Department employees with less length of service remained on the job during the Plaintiffs' 30-day qualifying period of unemployment.

"The Common Pleas Court refused to grant either a temporary or permanent injunction in that it would not be appropriate for the reason that there existed an adequate remedy at law. The plaintiffs thereafter prosecuted an appeal to the Court of Appeals of Montgomery County, Ohio."

The action the defendants complain of was effected through the amendment of Rule 24 of the regulations of the civil service board. In order to obtain financial aid from the federal government under the emergency employment act of 1971, the long established rule that in case of lay-offs those with least seniority should be laid off first, was modified to comply with a federal requirement that an employee, before receiving pay from federal funds, should have been unemployed for thirty days. This resulted in those with least seniority being re-employed and paid by federal funds, while plaintiffs and others with greater seniority, laid off later, remained idle.

The briefs have devoted considerable attention to the powers of the defendant charter city to regulate matters of

employment, regardless of state statutes adopted under provisions of the constitution. Plaintiffs, the appellants herein, contend that R. C. 143.28, providing protection for seniority in case of lay-offs, renders the attempted revision of Rule 24 invalid; and that such superior authority derives from Section 34, Article II, and Section 10, Article XV of the Constitution, and is recognized by Section 3, Article XVIII.

Defendants respond that under Section 3, Article XVIII and the home rule or charter provision of Section 7, Article XVIII, complete power over these matters is lodged in the city. They argue that the Supreme Court has so held in *State, ex rel. Canada*, v. *Phillips* (1958), 168 Ohio St. 191.

The answer to that question does not completely determine the claims of the plaintiffs in this case. Assuming, without deciding, that the city has complete authority to act in such a matter, unrestricted by statute, nevertheless it must not deprive plaintiffs of their vested legal rights. It is our opinion that the attempted amendment or revision of Rule 24 would do so. Earned and vested seniority rights are a vital part of the contract between the defendant city and the plaintiffs. No state, much less a municipality within a state, may pass any law impairing the obligation of contracts, including contracts of its own. Section 10, Article I, United States Constitution; Section 28, Article II, Constitution of Ohio (limiting specifically the General Assembly).

The plaintiffs have a contractural right, which is enforceable, and which is the object of constitutional protection. See 10 Ohio Jurisprudence 2d 601, 605, Constitutional Law, Sections 541 and 542.

We believe it is obvious that this contractural right cannot be effectively enforced without the aid of equity. Much more is involved than lost wages, important as they are; namely, the seniority rights already discussed, credit toward sick leave, vacation time, retirement benefits, etc. We can conceive of no adequate remedy at law, or any administrative appeal under R. C. Chapter 2506, which will secure these rights.

Furthermore, an administrative appeal is inapplicable and unavailable because such an appeal, provided in R. C. Chapter 2506, will not lie from legislative action. *In re Passage of Ordinance* (1963), 118 Ohio App. 457; *In re Appeal of Clements* (1965), 2 Ohio App. 2d 201; *In re Application of Latham* (1965), 5 Ohio App. 2d 187; *Stocker v. Wood* (1969), 18 Ohio App. 2d 34; *Remy v. Kimes* (1963), 175 Ohio St. 197; *Berg v. City of Struthers* (1964), 176 Ohio St. 146; *Tuber v. Perkins* (1966), 6 Ohio St. 2d 155.

Plaintiffs' attack in this case is upon city civil service rule No. 24. There is no question that defendants followed that rule. The challenge is to the rule itself.

In support of that rule, the defendants' brief, beginning on page 8, declares it to be a legislative action, fully authorized under home rule powers of the city, in these words:

"It is the contention of the defendants-appellees that in this particular area of Home Rule authority, the City has enacted a valid Civil Service regulation which was duly authorized by the City Commission: and that even if it may possibly conflict with State law, that in this particular area, Home Rule authority of the City is supreme and that the City may pass regulations that it deems proper in the exercise of its *legislative* discretion." (Emphasis added.)

Defendants argue that those with less seniority than plaintiffs, who have thus become Firefighters EEA (under the Emergency Employment Act), are really in a different category of employment than plaintiffs, so that the latter are not suffering discrimination. The inescapable corollary to that argument would be that when and if plaintiffs qualify for federal pay, they enter a new and different category, and that this, too, would be a modification of their existing contract.

Defendants urge that if plaintiffs prevail in this action, they may ultimately lose financially, because of a possible withholding of further federal funds. That is a decision to be made by the plaintiffs, not by the court.

We appreciate the predicament of cities whose citizens, reluctant under the burden of many taxes, have denied

them additional revenue. Defendants, like others, have sought diligently for other funds. It is to their credit that they have requested, although unsuccessfully, a waiver of the 30-day unemployment requirement as a prerequisite to federal relief. That requirement is at the heart of the present controversy.

The case contains a moral and a warning. In the "Washington gold rush" now in fashion, local independence, and even personal liberty, are too often trampled under foot. The instant case should alert everyone to the control which usually accompanies federal grants. Too often, these apparently gratuitous morsels are attached to a leash wherewith to control and even to strangle the recipients. There is a very real danger that those who now vigorously proclaim their independent rights under a city charter, free from control by state statutes, may yield that independence to the mere whim of some bureaucrat, and thus barter away their birthright of freedom for an illusory mess of federal pottage.

Plaintiffs are entitled to injunctive relief which will fully restore to them their contractual rights, and it is so ordered.

*Judgment accordingly.*

SHERER, P. J., and KERNS, J., concur.