**Bernard Klein, et al., Plaintiffs-Appellees, v. Village of La Grange, a Municipal Corporation, Defendant-Appellant.**

Gen. No. 52,088.

First District, Second Division.

March 26, 1968.

Jacob Shamberg and William J. Linklater, of Chicago, for appellant.

Sidley & Austin, of Chicago (Robert A. Downing and Donald J. Gralen, of counsel), for appellees.

MR. JUSTICE LYONS delivered the opinion of the court.

Plaintiffs, Bernard Klein, Orville Rusch and Elvira Rusch, instituted proceedings for a declaratory judgment in the Circuit Court against the defendant, Village of LaGrange, Illinois (hereinafter referred to as the Village) objecting to and requesting declaratory relief from what was alleged to have been the wrongful denial of their application for a special use permit by said Village's Board of Trustees. The application had proposed the construction of a two-story, 25-suite medical-dental clinic with ample adjacent parking facilities upon the plaintiffs' respectively owned contiguous and abutting parcels of land, the suggested use to utilize in area approximately 50,000 of the 56,000 square feet made available by their joint enterprise. The site was and continues to be classified within the "A" zoning classification of the Village ordinances (Single-Family Residence District), wherein "clinics" are a prohibited use absent the granting of a special permit by the proper authority.

Plaintiffs alleged by their complaint that the refusal by the Board of Trustees was an "unauthorized, invalid and unconstitutional exercise of power by the Village" for a use of the premises which plaintiffs had "a clear legal right" to establish and maintain under the provisions of the ordinance in question. The Village, by its answer, alleged inter alia, certain matters in special defense to the action, particularly objecting to the purported absence of jurisdiction in the court to compel the issuance of the special use permit. Issue joined, the cause was set down and proceeded to a bench trial.

On January 16, 1967, after hearing considerable testimony and argument, the court below entered its judgment which, among its other findings and conclusions, adjudged the Board of Trustees' denial of plaintiffs' special use application as arbitrary, capricious and devoid of substantial relation to the public health, safety and morals, further directing the forthwith issuance of the requested permit and perpetually enjoining the Village from interfering with plaintiffs in their construction and utilization of the subject property for clinic purposes. It is from the entry of this judgment order that the Village brings its appeal.

Ostensibly, a factual question presents itself on review involving the propriety of the municipally sanctioned denial of the special use application and whether the evidence adduced below adequately demonstrated that the proposed use was one answering to and within the meaning of the term "clinics" as it appears and is made the subject of a specially permitted use in the ordinance's "A" classification. The court must first consider the Village's principal contention on appeal; to wit, that the Circuit Court was without jurisdiction to order the allowance of the use and direct the Board of Trustees to issue a special permit accordingly. It presents a somewhat novel question, which if resolved in the Village's favor, would transcend the otherwise persuasive elements of plaintiffs' arguments before us, the facts of the case then as they pertain to our disposition on this single issue to be limited accordingly.

The circumstances attendant the instant controversy for such purpose appear relatively undisputed. Plaintiffs are owners of adjoining parcels of land fronting upon the northeast corner of 51st Street and Willow Springs Road (commonly referred to as Gilbert Avenue) in the Village. The combined tract lies entirely within the previously described "A" zoning district. Immediately adjacent said property, to the east and south, is the LaGrange Com-

munity Memorial General Hospital, its temporary and permanent parking facilities resting in closest proximity to and offsetting the proposed site of the clinic. Save two additional nonconforming structures (a teen-age club and high school) within two to three blocks north of the subject tract on Willow Springs Road, the surrounding vicinity is predominated by either vacant property or buildings of the single-family residence variety.

"Hospitals and clinics" as the description appears in the Village zoning ordinances, is a prohibited use, accessible only by means of the special use device, in each and every of the various zoning districts as they are defined therein. As to the grant of authority for control in this regard, that ordinance provides:

> "The President and Board of Trustees may, by special permit after public hearing by the Zoning Board of Appeals, authorize the location of any of the following uses in any district, subject to such restrictions or safeguards as may be necessary to protect adjacent property, preserve or promote good neighborhood character, and protect the public health, public safety, and general welfare."
>
> . . . . . .
>
> "3. Hospitals and clinics.
>
> . . . . . .
>
> "Before issuing a special permit the President and Board of Trustees shall submit the application to the Village Plan Commission and request from said Commission a report upon the effect of the proposed building or use upon adjacent property, the character of the neighborhood, and traffic conditions, utility facilities, and other matters affecting the public health, public safety, and general welfare, and any required restrictions and safeguards. . . ." La Grange Municipal Code (1955) chapter 99, § 13.

In accordance therewith, plaintiffs, on May 4, 1965, filed their application with the Board of Trustees, which referred the matter for hearing, findings and recommendations to the Village Zoning Board of Appeals acting as the local Plan Commission. After full public hearings were conducted, the Zoning Board, on June 29, 1965 (as subsequently amended on July 12, 1965, in certain unimportant respects), unanimously recommended that the Board of Trustees issue the permit to plaintiffs for their proposed use of the subject premises as a clinic.

Receipt of same by the Board of Trustees was acknowledged at its meeting on November 22, 1965, and agreement being entered at that time to withhold action on plaintiffs' application pending further study. Thereafter, on February 14, 1966, without further hearings in the matter, the Board of Trustees voted to deny plaintiffs' special use application "at this time" offering by way of explanation: (1) their desire to inquire into the possible improvements the hospital might make upon its undeveloped property immediately adjacent to the subject site; and (2) the existence of commitments made to local residents involved in the annexation of this area that the properties would be retained in residential development. It was from such denial that plaintiffs successfully prosecuted their declaratory judgment action to the court below, predicated upon the aforesaid impropriety of action by the Village Board of Trustees.

The Village submits that the local Board of Trustees is a legislative body which acted in a legislative capacity in denying application. This it distinguishes from the administrative nature of the Zoning Board of Appeals. It is the thrust of its position on appeal that inasmuch as plaintiffs, by their complaint and proofs, have not sought to in any way impugn the constitutionality of the underlying zoning classification, rather limiting their attack to the arbitrary and capricious manner in which that Board made its rejection, the issuance of such permit

having been shown to be one demanding of legislative judgment, the relief granted was by principles of separation of powers beyond the legitimate realm of judicial decree. Plaintiffs argue, on the other hand, that the Village's authorities connote no such conclusion, but to the contrary manifest the availability of judicial review from the wrongful denial of special use applications without making the suggested distinction. It is important to note at this juncture, however, that plaintiffs neither deny the legislative nature of the board, nor contend that their complaint and proofs endeavored to contest the constitutionality of the "A" classification by the terms of which the attempted utilization of the subject property was prohibited other than to argue that it was erroneously applied by the board.

Concomitant with the undisputed legislative genesis of the body whose conduct is under inquiry, we feel it only fair to initially dismiss from consideration as inappropriate the cases of Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals of City of Chicago, 25 Ill2d 65, 182 NE2d 722 (1962); Rosenfeld v. Zoning Board of Appeals of Chicago, 19 Ill App2d 447, 154 NE2d 323 (1958) and Illinois Bell Tel. Co. v. Fox, 402 Ill 617, 85 NE2d 43 (1949), each, unlike the case at bar, having involved actions for administrative review or, as to the latter, in the nature of administrative review by certiorari, from adverse orders, in all instances, of the Chicago Zoning Board of Appeals, an administrative agency. The foregoing precedent is of no aid of our present determination, as neither the provisions of the ordinance in question vest in the Zoning Board of Appeals powers of finality (LaGrange Municipal Code (1955) chapter 99, § 13), nor has this matter come to be heard on administrative review.

■ We have carefully scrutinized the remaining authorities offered on the point and are impelled to conclude that, in absence of some claim to the unreasonableness of

the zoning classification's exclusion of plaintiffs' proposed use, plaintiffs cannot properly invoke the jurisdiction of the court to assail the propriety of the legislative denial of their special use application. The rationale is lodged in the simple proposition that the Board of Trustees is, in fact, a legislative component vested with the final authority for such matters which, "may" in its discretion, after public hearings by the Plan Commission (or as here the Zoning Board of Appeals acting in its stead), reject or accept the particular use in question. It is a determination, by the guidelines of precedent, we have found which cannot singularly or by itself be made the subject of judicial inquiry.

A comment in the case of Village of Justice v. Jamieson, 7 Ill App2d 113, 129 NE2d 269 (1955) is particularly demonstrative of the distinction which the Village urges. There, prayer was made that the court invalidate an ordinance enacted by the County Board of Cook County which, by rezoning the property in dispute, countenanced its use as a trailer camp, upon the ground that certain fraudulent misrepresentations and conflict of interests to achieve that end had been involved. Distinguishing between the administrative role of the County Board of Appeals and the legislative role of the County Board, for which the former acts as a fact finding body, the court noted at page 119:

> ". . . In such a case the action having legal significance is the County Board's passage of the amending ordinance. *This being legislative, the court cannot inquire into whether the action of the County Board was based on adequate knowledge nor into the motives of its members or employees,* nor is there any principle or precedent on which a legislative act may be held invalid because some fact was misrepresented to the legislative body." [Emphasis supplied.]

Cf. Anthony v. City of Kewanee, 79 Ill App2d 243, 223 NE2d 738 (1967).

While we recognize that Justice and Anthony, upon which we premise our views, concerned charges directed at affirmative rather than, as here, negative legislative action, we cannot envision, nor have plaintiffs drawn, what we could deem to be a valid distinction between the two. The significant factor remains that, by the reported decisions of this State, the only heretofore successful method of obtaining judicial review from an adverse legislative determination of this sort has been by the instance of an independent action on a new record directly attacking the constitutionality of the underlying zoning classification as applied. Recourse of this nature, we might add, has met with varying results depending upon the balance of equities peculiar to the merits of the respective case. Hartung v. Village of Skokie, 22 Ill2d 485, 177 NE2d 328 (1961) ; Ward v. Village of Skokie, 26 Ill2d 415, 186 NE2d 529 (1962) ; Camboni's, Inc. v. DuPage County, 26 Ill2d 427, 187 NE2d 212 (1962) ; Lazarus v. Village of Northbrook, 31 Ill2d 146, 199 NE2d 797 (1964) ; LaSalle Nat. Bank v. County of Cook, 60 Ill App 2d 39, 208 NE2d 430 (1965).

█ Plaintiffs have not called to the court's attention any precedent wherein an aggrieved property owner succeeded by pursuit of an action predicated, as here, exclusively upon proof of the improper conduct of a municipal legislative zoning authority. Kotrich v. County of DuPage, 19 Ill2d 181, 166 NE2d 601 (1960), moreover, was not such an instance. It was in Kotrich that our Supreme Court gave approval to the special permit technique of land regulation. There, objection was made to the absence of adequate standards in the county zoning ordinance whereby one was to judge the legitimate bounds of discretion the DuPage County Board of Supervisors enjoyed in weighing the merits of special use applications,

an argument which is not advanced in the case at bar. In rejecting that theory, the court stated:

". . . Since the board of supervisors is a legislative body, precise standards to govern its determination are not required."

It thus becomes apparent from our reading of the foregoing authorities that there exists a deep-rooted disposition on the part of our courts to refrain from interfering with legislatively sanctioned zoning determinations made at the county and municipal levels. It is a conclusion which plaintiffs profess to refute by a strained construction of those decisions.

Following Kotrich, the Supreme Court in Hartung v. Village of Skokie, supra, in reaching a contrary determination, expanded upon its previous decision. Of particular insight in this regard however was the presence in Hartung of an attack upon the constitutionality of the governing zoning classification. There, the court in striking down the ordinance in the plaintiffs' favor, delivered the following qualifying remarks:

". . . But, as the opinion in that case (Kotrich) shows, our approval of the special use technique does not mean that a determination to permit or to deny a special use is beyond judicial review.

"Where, as here, the application for a special use has been rejected, plaintiffs have the right to challenge the constitutionality of the underlying zoning classification. . . ." [Insert supplied.]

Plaintiffs purport to case doubt upon the efficacy of the Hartung decision as applied to the instant case because of the absence of use of mandatory language therein. The subsequent case of Ward v. Village of Skokie, supra, we feel adequately forecloses upon any misapprehensions which may have arisen. There a municipal board of trustees was alleged to have acted unreasonably under the terms of an arbitrary and unconstitutional amendatory

ordinance, which averments were sustained by the court. Plaintiffs, however, erroneously allude to the finding in Ward of the unreasonableness of the legislative action overlooking that such a determination was made only insofar as it related to the denial of a proposed use on the basis of an arbitrary and void ordinance, which ordinance had again been directly challenged.

The conclusion we draw from the majority opinion in Ward is consonant with and possibly best exemplified by the interpretation afforded that decision by the specially concurring opinions of Mr. Justices Klingbiel and House. The Justices therein, at length, vigorously advocated the repudiation of what they phrased the Kotrich and Hartung pronouncements of "immunity from review" as it was applied to the piecemeal and ad hoc determinations of legislative bodies, further categorizing the vice of that rule as the "attempt of a legislative body to assume a power, in its uncontrolled discretion, . . . ."

Plaintiffs, moreover, demonstrate their misinterpretation of the majority position in Ward by arguing that Ward effectively established that the Village Board of Trustees in rejecting the instant application was, in fact, acting in an administrative or quasi-judicial capacity, notwithstanding its otherwise legislative composition, and hence was properly subjected to review by the court below. In fact however, it was because of the exactly opposite conclusion of the majority on the question which caused the two justices to level the following criticism:

> ". . . To place them [special use activities] in the hands of legislative bodies, whose acts as such are not judicially reviewable, is to open the door completely to arbitrary government. . . . The rule is familiar enough that courts may not inquire into the motives or reasons on which the legislative body acted. See Village of Justice v. Jamieson, 7 Ill App2d 113." [Insert supplied.]

327

Notwithstanding the repeated dissents of Mr. Justices Klingbiel and House, the majority of our Supreme Court has continued in reaffirmance of its previously noted unwillingness to molest legislative judgments, absent direct attack upon the constitutionality of the particular zoning ordinance. Camboni's, Inc. v. DuPage County, supra; Lazarus v. Village of Northbrook, supra. Suffice to say, it is that disposition by which we are bound, in absence of prohibition or alteration of the device of special uses by our General Assembly which, as noted in Lazarus v. Village of Northbrook, supra, has met with disapproval. HB 650, HB 651, 73rd General Assembly (1963). Cf. LaSalle Nat. Bank v. County of Cook, supra.

Finally, plaintiffs offer the anomalous situation that "clinics" being a prohibited use in all eight zoning districts of the Village, it would have been unavailing for them to challenge the validity of the existing "A" classification as applied since there was no classification to which the proposed use of the site could be changed. Fundamental principles dictate to the contrary. The issue is not one of the feasibility of change in classification, but rather whether the particular classification as applied to property within its bounds, by exclusion of certain uses, operates so as to amount to a deprivation of property without due process of law. Plaintiffs could have tested the reasonableness of the "A" classification but elected to pursue another avenue of relief. The specific reasons, purpose or motives prompting the act of refusal by the Board of Trustees itself having been shown to be unsusceptible to judicial review, a further dissertation on the merits of the cause before us is therefore not in order.

For the above reasons, the judgment is reversed and the cause remanded with directions to enter judgment for the defendant-Village.

Judgment reversed and remanded with directions.

BURKE, P. J., and McNAMARA, J., concur.