[No. 41919. En Banc. January 6, 1972.]

BRUCE E. DUROCHER *et al., Respondents and Cross-appellants,* v. KING COUNTY *et al., Appellants,* WEYERHAEUSER PROPERTIES, INC., *et al., Respondents.*

WEYERHAEUSER PROPERTIES, INC., *et al., Respondents,* v. KING COUNTY *et al., Appellants,* BRUCE E. DUROCHER, *Respondent and Cross-appellant.*

*Derrill T. Bastian,* for appellants King County et al.

*Malcolm J. Bell* and *Bruce E. Durocher,* for respondents and cross-appellants.

*Lyle L. Iversen* (of *Lycette, Diamond & Sylvester),* for respondents.

*Montgomery, Purdue, Blankinship & Austin,* amicus curiae.

STAFFORD, J.—This is an appeal from a preliminary determination by the superior court that the King County Coun-

cil's act of granting an "unclassified use permit" was an administrative act not subject to referendum but that such action was void because the county council is without power, under the home rule charter, to act in an administrative capacity.

In September 1969, respondents, Weyerhaeuser Properties, Inc., for its lessee, Stoneway Concrete, Inc. (hereinafter referred to jointly as Weyerhaeuser), made application to King County for an "unclassified use permit". They sought authority to excavate sand and gravel and to establish a complete aggregate facility and asphalt batching plant on a 500-acre plateau in south King County.

The land for which the "unclassified use permit" was sought is located in an area zoned "G" (General), in section 24.24.020 of the King County Zoning Code (hereinafter called the code). A "G" zone, as defined in section 24.24.010 of the code, is a classification, essentially rural in nature, designed to prevent premature establishment of urban land uses. "Unclassified uses" identified in section 24.44.020 of the code are authorized provided a permit is obtained.

The application was received by the King County planning department which, without a hearing, made a report to the county council recommending that the "unclassified use permit" be granted subject to certain specified conditions. The council held three public hearings on the application. Subsequently, in August 1970, the county council passed ordinance No. 00544, thereby granting the permit with conditions. The county executive permitted the ordinance to become law without his signature.

On August 31, 1970, the Durochers, who lived in the area, applied to the superior court for a writ of certiorari to review the county council's action in granting the permit. Also on that date, referendum No. 1, which seeks to refer ordinance No. 00544 to the voters of King County, was filed with the clerk of the county council.

Weyerhaeuser brought suit to enjoin the county council from processing and submitting the referendum to the voters. The Durochers intervened in the injunctive action.

Certiorari was granted in their case, and the two causes were consolidated.

Before proceeding to the merits on either cause, the trial court decided two issues, the disposition of which forms the basis for this appeal: (1) Was the action of the King County Council in passing ordinance No. 00544 a legislative act? (2) Did the King County Council have any right to act upon the application for the "unclassified use permit"?

On the first issue the trial court ruled that the granting of an "unclassified use permit" is an executive or administrative function and is not a legislative function subject to referendum. On the second issue the court found that an "unclassified use permit", under the code, is a type of "conditional use permit" to be processed by the county planning department with an appeal to the board of appeals as provided in the charter. Based on that finding, the court held that granting of the "unclassified use permit" by the *council* was void. The referendum was enjoined and the Weyerhaeuser application for the "unclassified use permit" was referred to the county planning department. The judgment was made the final disposition in both cases.

King County and the Durochers have appealed the trial court's decision that an "unclassified use permit" is the same as a "conditional use permit". Additionally, King County has challenged the ruling that the county council's action in issuing an "unclassified use permit" is void. The Durochers have cross-appealed, assigning error to the trial court's adjudication that the granting of the permit is an administrative act and not subject to referendum.

The Durochers raise two further issues. If the county council has authority to grant an "unclassified use permit": (1) Did the procedure followed by the council in granting the Weyerhaeuser permit violate due process? (2) Are the Durochers entitled to a review, on the merits, of the council's action?

Each of the four issues will be considered separately.

I

Quaere: Did the county council have the power to approve the Weyerhaeuser application for an "unclassified use permit"?

Answer: Yes.

 RCW 36.70 is the enabling statute which provides authority for, and the procedures to be followed by, a county in adopting and administering a comprehensive plan and zoning ordinance. Pursuant thereto, King County enacted its zoning code in 1963 and concurrently developed a comprehensive plan which was adopted in 1964.

The enabling statute provides that the board of county commissioners may adopt by ordinance "official controls" which further the objectives and goals of the comprehensive plan. RCW 36.70.550. RCW 36.70.020(11), in pertinent part, defines "official controls" as:

> legislatively defined and enacted policies, standards, precise detailed maps and other criteria, all of which control the physical development of a county . . . Such official controls may include, but are not limited to, ordinances establishing zoning . . .

Among the official controls adopted were those pertaining to "unclassified uses" and "conditional uses". Section 24.44.010 of the code provides that certain uses are characterized as "unclassified" because they possess:

> characteristics of such unique and special form as to make impractical their being included automatically in any classes of *use* as set forth in the various *classifications* herein defined, and the authority for the location and operation thereof shall be subject to review and the issuance of a *use* permit.

Acting pursuant to the enabling statute, the board of county commissioners enacted sections 24.44.020 and 24.44.030 of the code which list, respectively, those uses requiring "unclassified use permits"[1] and those for which

---

[1]"24.44.020 Uses requiring *unclassified use permit*. The following *uses* may locate subject to the issuance of an *unclassified use permit* processed as provided in Chapter 24.60.

"(1) *Airports and landing fields and heliports*

"conditional use permits"[2] are required. Among the uses requiring "unclassified use permits" are:

24.44.020 (6) Quarrying and mining, including . . . the removal and processing of sand, gravel, rock . . . together with necessary *buildings*, apparatus or appurtenances incident thereto provided:

. . .

(c) in conjunction with such operations, allied *uses* such as . . . rock crushers, concrete batching plants and asphalt batching plants may be authorized by the board . . .

The term "unclassified use" is used neither in the enabling statute nor in the charter. In fact, one does not find it

---

"(2) Correctional institutions . . .

"(3) *Dumps,* public or private, and commercial incinerators . . .

"(4) Hydro-electric generating plants . . .

"(5) Jail farms or honor farms, publicly-owned and used for the rehabilitation of prisoners . . .

"(6) Quarrying and mining, including borrow pits to a depth of over three (3) feet and the removal and processing of sand, gravel, rock, peat, black soil and other natural deposits, together with necessary *buildings,* apparatus or appurtenances incident thereto provided:

". . .

"(c) in conjunction with such operations, allied *uses* such as, but not limited to, rock crushers, concrete batching plants and asphalt batching plants may be authorized by the board provided:

"1. when the natural deposit has been depleted or the excavation is completed as prescribed by the permit, all operation shall terminate and all equipment and *structures* shall be removed;

". . .

"(d) time limits may be imposed at which time such operations shall terminate;

". . .

"(7) Booster stations or conversion plants with the necessary *buildings,* apparatus or appurtenances incident thereto of *public utilities* or utilities operated by mutual agencies . . . Distribution mains are permitted in any *zone* without review

"(8) *Public utility* power generating plants

"(9) Refuse disposal sites, provided sanitary-fill method is used

"(10) Sewage treatment plants

"(11) Sanitary fills—reclamation for public purpose by public agency

"(12) Transfer stations (refuse and garbage) when operated by a public agency. (Res. 25789 § 2201; April 29, 1963)."

[2]"24.44.030 Uses requiring *conditional use permit.* The following *uses* may locate subject to the issuance of a *conditional use permit*

discussed in zoning literature, generally. Nevertheless, the board of county commissioners, in adopting the 1963 code, clearly differentiated between "unclassified uses" and "conditional uses". One may attempt to distinguish the uses listed under the respective categories on the ground that those for which an "unclassified use permit" is required have a wider community impact, both territorially and to the extent that their operation affects other municipal functions, than do those for which a "conditional use permit" is required. But, irrespective of whether such a distinction can be made, nothing in the enabling statute proscribed the county from dealing with those varied uses in different ways. The board did not exceed the authority conferred upon it.

In establishing "unclassified uses" the commissioners act as a legislative body exercising legislative powers. Absent a showing that their action was arbitrary and capricious, this

---

processed as provided in Chapter 24.58.

"(1) Cemeteries . . .

". . .

"(2) Columbariums, crematories and mausoleums . . .

"(3) Commercial establishments or enterprises involving large assemblages of people or automobiles as follows . . .

"(a) Amusement parks

"(b) Boxing and wrestling arenas

"(c) Ball parks

"(d) Fairgrounds and rodeos

"(e) Golf driving ranges

"(f) Labor camps (transient)

"(g) Open-air *theatres*

"(h) Race tracks, drag strips, motorcycle hills and Go-Kart tracks

"(i) Stadiums

"(4) Fire stations . . .

". . .

"(5) *Hospitals, mental and alcoholic* . . .

"(6) Institutions for training of religious orders.

"(7) Radio, micro-wave or television transmitters, towers and appurtenances.

"(8) *Recreational areas, commercial,* including yacht *clubs,* beach *clubs,* tennis *clubs,* parks, ski areas, marinas and similar activities.

"(9) Universities and colleges, including dormitories and fraternity and sorority houses when on campus. (Res. 25789 § 2202; April 29, 1963)."

court will not interfere. *Lillions v. Gibbs*, 47 Wn.2d 629, 632, 289 P.2d 203 (1955).

■ The enabling statute left to the board of county commissioners (*i.e.*, the legislative body) the establishment of administrative rules and procedures for the processing of applications for such uses. The power to administer such zoning controls is also vested in that body. RCW 36.70.670 provides:

> The board may determine and establish administrative rules and procedures for the application and enforcement of official controls, and may assign or delegate such administrative functions, powers and duties to such department or official as may be appropriate.

Additionally, it will be noted that the right to assign or delegate that power is given *solely* to the legislative branch. Thus, unless assigned or delegated by it, the power remains with the board.

As originally enacted, the procedure for obtaining an "unclassified use permit" differed from that for obtaining a "conditional use permit". Under chapter 24.60 of the code, the procedure for obtaining an "unclassified use permit" consisted of an application to and a determination by the planning commission with a right of appeal to the board of county commissioners. Under chapter 24.58 the means of obtaining a "conditional use permit" consisted of an application to the board of adjustment followed by "an appeal to the superior court for a writ of certiorari, a writ of prohibition or a writ of mandamus".

In 1968 the electors of King County, acting pursuant to Const. art. 11, § 4 (amendment 21), adopted a home rule charter (hereinafter called the charter) which became effective in May 1969. Section 130 thereof provides that it shall supersede special and general laws which are inconsistent therewith, and section 990 provides that:

> All ordinances, resolutions and other official actions of the board of county commissioners which are in effect on the effective date of this charter and which are not inconsistent with this charter shall continue in effect until

they are amended, repealed or superseded in accordance with the provisions of this charter.

Comparison of the charter with the procedural provisions of chapters 24.58 and 24.60 of the code makes it clear that the charter abrogated the procedural portions of those two chapters which dealt with "unclassified" and "conditional" uses. For example, the board of adjustment provided for in chapter 24.58 no longer exists under the charter. Its functions in the processing and granting of "conditional use permits" and variances have been delegated to the department of planning[3] and the board of appeals.[4] Furthermore, the planning commission and the board of county commissioners provided for in chapter 24.60 of the code no longer exist. Their functions in the processing and granting of "unclassified use permits" and in considering and passing upon planned unit development applications are nowhere delineated in the charter. However, other functions of each, including considering and passing upon amendments to the comprehensive plan and the zoning ordinance, have been

---

[3]King County Charter, Art. 9, § 920.20.70. *Department of Planning.* "The department of planning shall prepare and present to the county council comprehensive plans for adoption by ordinance with or without amendments; shall advise all agencies of the county on planning; shall coordinate planning of the county with other governmental agencies; and shall assist the office of budgets and accounts in developing capital improvement programs and capital budgets.

"The department of planning shall receive and consider all zoning applications. It shall make the initial decision concerning all applications for zoning variances and *conditional use permits,* and its decisions shall be final unless appealed to the board of appeals. It shall consider and make recommendations to the county council concerning all applications for rezoning or original zoning." (Italics ours.)

[4]King County Charter, Art. 7, § 720. *Powers.* "The board of appeals shall hear and decide all appeals from the granting or rejecting of an application for a zoning variance or *conditional use permit* by the executive branch and from any valuation by the department of assessments. The county council may by ordinance provide for an appeal to the board of appeals from any other order by an executive department or administrative office. The decision of the board of appeals shall be final unless reviewed by a state agency as provided by general law or appealed to a court of competent jurisdiction within the time limits established by ordinance or general law." (Italics ours.)

delegated by the charter to the department of planning and the county council respectively.[5]

■ On the other hand, nothing in the charter expressly repeals or is inconsistent with the substantive provisions of code chapter 24.44 which lists the uses for which a "conditional use permit" or "unclassified use permit" may be obtained. Repeal by implication is not favored. *Copeland Lumber Co. v. Wilkins,* 75 Wn.2d 940, 454 P.2d 821 (1969); *Fransen v. Board of Natural Resources,* 66 Wn.2d 672, 404 P.2d 432 (1965). The repeal of the procedural provisions and the retention of the substantive provisions in the code created an anomalous situation. The "unclassified use permit" authorized by chapter 24.44 continued to exist without an available procedure by which one could be obtained.[6]

In reaching the conclusion that the procedure for obtaining an "unclassified use permit" was governed by that provided for obtaining a "conditional use permit", the trial court focused its attention on section 920.20.70 of the charter, which established the department of planning and provides:

The department of planning shall receive and consider all zoning applications. It shall make the initial decision concerning all applications for zoning variances and *conditional use permits,* and its decisions shall be final unless appealed to the board of appeals. It shall consider and make recommendations to the county council concerning all applications for rezoning or original zoning.

(Italics ours.)

---

[5] See note 3, *supra.*

[6] It is not strained to conclude that this circumstance was caused by an oversight by the freeholders. It is reinforced by the fact that on December 8, 1969, after the council's first hearing on the Weyerhaeuser application, the council passed ordinance No. 00263. Among other things, the new ordinance set up a procedure for the processing of "unclassified use permits" and planned unit development applications. It also provides that application shall be made to, and an initial determination made by, the zoning and subdivision examiner with final determination to be made by, and with right of appeal to, the *county council.* It is of interest to note that this procedure closely parallels that found in the code prior to enactment of the charter.

Apparently the trial court reasoned that since the foregoing charter provision mentioned only variances and "conditional use permits" as one alternative and rezoning as the other, an "unclassified use permit" must be treated as the former because it is more closely identified therewith; that the issuance of an "unclassified use permit" was an administrative act; and, that the county council possessed no power to act administratively. Thus, the trial court concluded that the council's action in granting the "unclassified use permit" was void; and, that the proper procedure for obtaining such a permit was that for "conditional use permits" in charter section 920.20.70.

 The trial court erred in concluding that the county council has no power to act administratively. The Washington State Constitution (article 11, section 4, amendment 21) which authorizes counties to adopt home rule charters, provides:

> After the adoption of such charter, such county shall continue to have all the rights, powers, privileges and benefits then possessed or thereafter conferred by general law. *All the powers, authority and duties granted to and imposed on county officers by general law . . . shall be vested in the legislative authority* of the county *unless expressly vested in specific officers by the charter.* The *legislative authority may* by resolution *delegate* any of its *executive or administrative powers,* authority or duties *not expressly vested in specific officers by the charter,* to any county officer of officers or county employee or employees.

(Italics ours.) The foregoing provision confers upon the county's *legislative body* certain executive and administrative powers to the extent those powers have not been expressly vested in specific officers by the charter.

The preamble to the charter expresses an intent to establish separate legislative and executive branches. Charter section 210 designates the county council as the legislative branch, and section 220.20 provides:

> *The county council* . . . shall have all legislative powers of the county . . . except as otherwise provided herein *shall have the power to establish, abolish, combine and divide administrative offices and executive departments and to establish their powers and responsibilities* . . .

(Italics ours.) Charter section 310 provides for the composition and powers of the executive branch as follows:

> The executive branch shall be composed of the county executive, the county administrative officer, the county assessor, the officers and employees of administrative offices and executive departments established by this charter or *created by the county council* and the members of boards and commissions except the board of appeals and the personnel board. The executive branch shall have all executive powers of the county under this charter.

(Italics ours.)

Since the constitution provides that all powers imposed on county officers by general law are *vested in the legislative body* of the county *"unless expressly vested in specific officers by the charter,"* it solves no problem merely to say that since the charter vests all executive powers in the executive branch, the county council possesses no administrative powers. The question here is the power of the county council to administer a *particular type of official control* under the zoning code. To find that the charter divests the county council of that administrative power, the constitution requires that one also find that the charter *expressly* vests that power in other *specific* officers.

As noted above, some powers of administration, such as the issuance of "conditional use permits", are expressly vested by charter in the department of planning *(i.e.,* an executive department). Section 920.20.70. Other administrative powers of zoning are expressly vested in the board of appeals, an autonomous agency outside the executive branch. Charter section 720. However, section 920.20.70 notwithstanding, the charter makes no express grant of power to any officer or department to issue "unclassified use per-

mits". Thus, under the constitution and the charter, the power to issue "unclassified use permits" remains with the county council (*i.e.*, the legislative body) because the charter does not expressly vest it in some specific office or officer and the county council has not delegated or assigned this power to another authority.

A similar result was reached in *Corporation Way Realty Trust v. Building Comm'r*, 348 Mass. 732, 205 N.E.2d 718 (1965). In that case, the City of Medford adopted a new charter which replaced its board of aldermen with a city council and a city manager. A zoning ordinance that was carried forward under the new charter provided that a special use permit, there in issue, be granted after approval of the board of aldermen. The court held that the city council, being the legislative body under the new charter, and not the city manager or his appointee, was the proper body to approve the permit.

In our determination that, based upon the constitution and charter, the council possesses the power to act administratively in the issuance of "unclassified use permits", we are not unmindful of *Paget v. Logan*, 78 Wn.2d 352, 358, 474 P.2d 247 (1970). That case is, however, not controlling. In *Paget* the question of whether the council possessed the *power* to act in an administrative capacity was not in issue. We merely noted that the charter divides legislative and executive functions between the council and the executive office. We did not state that such division of power is "absolute". We commented at page 358:

> it would be anomalous, indeed, to conclude that in accepting, rejecting or deciding between site findings and recommendations submitted by the stadium commission to the "governing body" of the county [*i.e.*, the county council] . . . the county council would be performing anything other than a legislative function.

Further, we did not hold that the council lacked power to act in other than a strictly legislative capacity. To so hold would have contravened Const. art. 11, § 4 (amendment 21)

which, as indicated above, recognizes that in certain instances the council does possess administrative power.

Inasmuch as the council under the constitution and the charter has the power to act in an administrative capacity and since the power to grant "unclassified use permits" was not delegated by the charter or the code, the council's act of granting an "unclassified use permit" was not void.

## II

Quaere: Was the county council's action in granting the "unclassified use permit" subject to referendum?

Answer: No.

■ Whether the council's action in granting an "unclassified use permit" is legislative or administrative is a judicial question. *Paget v. Logan, supra; State ex rel. Payne v. Spokane,* 17 Wn.2d 22, 134 P.2d 950 (1943). We have not previously decided this precise issue.[7]

In other jurisdictions there is a split of authority. However, the better view declares that such actions are administrative.[8] *In re Clements' Appeal,* 2 Ohio App. 2d 201, 207 N.E.2d 573 (1965); *Essick v. Los Angeles,* 34 Cal. 2d 614, 213 P.2d 492 (1950); 3 R. Anderson, American Law of Zoning, § 15.10 (1968).

■ In distinguishing between legislative and administrative actions of municipal legislative bodies, courts have frequently adopted two tests stated in 5 E. McQuillin, The Law of Municipal Corporations, § 16.55 (3d ed. 1969 rev. vol.) at page 213:

Actions relating to subjects of a permanent and general character are usually regarded as legislative, and

---

[7] The Washington State Court of Appeals has held that the granting of permits by a municipal legislative body, pursuant to a zoning ordinance, is an administrative action. *Sharninghouse v. Bellingham,* 4 Wn. App. 198, 480 P.2d 233 (1971); *Lund v. Tumwater,* 2 Wn. App. 750, 472 P.2d 550 (1970).

[8] *Contra see Artz v. Commercial Nat'l Bank,* 125 Ill. App. 2d 86, 259 N.E.2d 813 (1970); *Klein v. La Grange,* 93 Ill. App. 2d 318, 236 N.E.2d 351 (1968).

those providing for subjects of a temporary and special character are regarded as administrative. . . .

The test of what is a legislative and what is an administrative proposition, with respect to the initiative or referendum, has further been said to be whether the proposition is one to make new law or to execute law already in existence. The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.

(Footnotes omitted.) These tests find support in our own opinions. *State ex rel. Ogden v. Bellevue*, 45 Wn.2d 492, 275 P.2d 899 (1954); *State ex rel. Harlin v. Superior Court*, 139 Wash. 282, 289, 247 P. 4 (1926); cf., *Floyd v. Department of Labor & Indus.*, 44 Wn.2d 560, 571, 269 P.2d 563 (1954).

The county council's issuance of an "unclassified use permit" is an administrative action under either of the two tests provided in McQuillin. Ordinance No. 00544, which granted the "unclassified use permit", was an act of a temporary and special character. It applies only to the particular parcel of land owned by Weyerhaeuser and subjects its use to 24 specific and detailed conditions. Further, even though the permit was granted for a 10-year period subject to consecutive 5-year extensions not to exceed a total of 40 years, it is subject to revocation, without notice, if the permittee fails to comply with the conditions therein. Finally, upon completion of the permitted use, rehabilitation of the site is required. With regard to the second test, we note that ordinance No. 00544 specifically provides that it is enacted in accordance with the general zoning ordinances. It establishes no new policy. It merely pursues policy previously established in chapter 24.44 of the code pertaining to "unclassified uses".

The Durochers contend that, in effect, issuance of the permit amounted to an act of "rezoning" and thus was legislative in nature rather than administrative. However, there is a difference between an act of rezoning and the

granting of a permit pursuant to an established zoning ordinance.

Rezoning contemplates the amendment of an existing zoning ordinance which changes the zoning classification of a previously zoned area. On the other hand, while the granting of an "unclassified use permit" may authorize a change in land use, the issuance of a special permit contemplates an exception granted pursuant to a previously existing zoning ordinance, subject to certain guides and standards laid down therein. *Cadem v. Nanna,* 243 Md. 536, 221 A.2d 703 (1966); *Troup v. Bird,* 53 So. 2d 717 (Fla. 1951). *In re Clements' Appeal,* 2 Ohio App. 2d 201, 207 N.E.2d 573 (1965), demonstrates this legal distinction. There the owner of land in a U-2 residential district prevailed upon the city council to rezone the land U-4. Although the U-4 zone was essentially residential in nature, the zoning ordinance authorized variances for certain inconsistent uses, including funeral homes. Thereafter, the petitioner requested a variance to permit the construction of a funeral home on the property in the U-4 zone. The court held that the act of changing the zone from U-2 to U-4 was rezoning which constituted a legislative act. However, it also held that the council's act of granting the variance was an administrative act.

In the instant case, the "unclassified use permit" does not amend the zoning code and thus does not create a rezone. The permit was granted pursuant to uses and standards previously laid down. The council's act in approving the permit was administrative in nature.

Administrative acts of municipal legislative bodies are not subject to referendum. *See,* 5 E. McQuillin, The Law of Municipal Corporations, § 16.55 (3d ed. 1969 rev. vol.); Crouch, *The Initiative and Referendum in Cities,* 37 Am. Pol. Sci. Rev. 491, 494 (1943); Comment, *Limitations on Initiative and Referendum,* 3 Stan. L. Rev. 497, 502 (1951); Annot., 122 A.L.R. 769 (1939). This rule is followed in Washington. *Neils v. Seattle,* 185 Wash. 269, 53 P.2d 848 (1936); *State ex rel. Harlin v. Superior Court,* 139 Wash.

282, 247 P. 4 (1926). Whether the act is characterized as an ordinance or as a resolution is not controlling, *Cuprowski v. Jersey City*, 101 N.J. Super. 15, 242 A.2d 873 (1968); *Monahan v. Funk*, 137 Ore. 580, 3 P.2d 778 (1931); 5 E. McQuillin, The Law of Municipal Corporations, § 15.02 (3d ed. 1969 rev. vol.).

The Durochers argue, however, that the right of referendum authorized in the charter is so broad that the general rule is not applicable. We do not agree. Recently we had occasion to note the broad and comprehensive initiative and referendum provisions[9] of the King County Charter. *Ford v. Logan*, 79 Wn.2d 147, 154, 483 P.2d 1247 (1971). In discussing the initiative power under the charter we noted a basic constitutional limitation imposed upon it.

A fundamental limit on the initiative power inheres in its nature as a legislative function reserved to the people. In Washington, that power derives from our Const. art. 2, § 1 (amendment 7). It is clear from the constitutional provision that the initiative process, as a means by which the people can exercise directly the legislative authority to enact bills and laws, is limited in scope to subject matter which is *legislative in nature*.

[9]King County Charter, Art. 2, § 230.40. *Referendum.* "Except as provided herein, an enacted ordinance may be subjected to a referendum by the voters of the county by filing with the county council prior to the effective date of the ordinance petitions bearing signatures of registered voters of the county equal in number to not less than eight percent of the votes cast in the county for the office of county executive at the last preceding election for county executive. Each petition shall contain the full text of the ordinance to be referred. The ordinance to be referred shall be placed on the ballot at the special or general election occurring more than forty-five days after the petitions are filed.

"An appropriation ordinance; an ordinance necessary for the immediate preservation of the public peace, health or safety or for the support of county government and its existing public institutions; an ordinance proposing amendments to this charter; an ordinance providing for collective bargaining; an ordinance approving a collective bargaining agreement; an ordinance providing for the compensation or working conditions of county employees; or an ordinance which has been approved by the voters by referendum or initiative shall not be subject to a referendum."

(Footnote omitted. Italics ours.)

An examination of the constitutional provision for referendum[10] leads us to the same conclusion. A home rule charter, being subject to the constitution and laws of this state,[11] cannot extend the power of referendum to other than legislative acts. We therefore, hold that inasmuch as the county council performed an administrative act when it enacted ordinance No. 00544, it is not subject to referendum.

### III

Quaere: Did the procedure followed by the county council violate procedural due process?

Answer: No.

■ The Durochers allege that even if the council has authority to grant an "unclassified use permit", the procedure followed constituted a violation of procedural due process under the state and federal constitutions. We do not agree. Submission of the department of planning's recommendation to the council without a hearing does not violate due process. The report of the department of planning was not binding on the council. The initial decision of whether the permit should be granted remained with the council. The Durochers were given ample opportunity to challenge the report in the three hearings before the council. *Dal Maso v. Board of County Comm'rs*, 238 Md. 333, 209 A.2d 62 (1965). No irregularity regarding notice or the hearing

---

[10]Const. art. 2, § 1(b): "(b) Referendum. The second power reserved by the people is the referendum, and it may be ordered on any act, bill, law, or any part thereof passed by the legislature, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions, either by petition signed by the required percentage of the legal voters, or by the legislature as other bills are enacted. *Six per centum, but in no case more than thirty thousand, of the legal voters shall be required to sign and make a valid referendum petition.*"

[11]Const. art. 11, § 4 (amendment 21) under which home rule charters are authorized provides: "Any county may frame a 'Home Rule' charter for its own government *subject to the Constitution and laws of this state . . .*" (Italics ours.)

procedure is alleged. In light of these facts, the requisites of procedural due process have been met.

## IV

Quaere: Are the Durochers entitled to a review, on the merits, of the action taken by the county council?

Answer: Yes.

The Durochers contend that if the council had authority to issue the "unclassified use permit", the trial court's determination cannot be the final disposition of their certiorari action. We agree. The judgment of the trial court is vacated, except insofar as it enjoins the King County executive and the superintendent of elections from expending public funds in checking signatures and submitting referendum No. 1 to the electors.

The case is remanded to the trial court for review, on the merits, of the council's action in granting Weyerhaeuser the "unclassified use permit".

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, NEILL, and WRIGHT, JJ., concur.