[No. 47859-7. En Banc. April 21, 1983.]

CITIZENS FOR FINANCIALLY RESPONSIBLE GOVERNMENT,
ET AL, *Appellants,* v. THE CITY OF SPOKANE,
ET AL, *Respondents.*

*Hemovich & Nappi,* by *Michael J. Hemovich* and *Jonathan C. Rascoff,* for appellants.

*James C. Sloane, Corporation Counsel,* and *Thomas F. Kingen* and *Pat Dalton, Assistants,* for respondents.

BRACHTENBACH, J.—The main question is whether a city ordinance enacting a business and occupation (B & O) tax is subject to referendum. It is.

A group of Spokane citizens sought a writ of mandamus to compel the City of Spokane to accept for filing certain referendum petitions. The purpose of the petitions was the repeal of, or in the alternative, a referendum on city ordinance C–25792, an ordinance relating to and providing for a B & O tax upon businesses, occupational pursuits and privileges within the city. The city clerk refused to accept the petitions for filing because of the city attorney's opinion

that ordinance C–25792 was not subject to referendum.

The trial court denied the plaintiffs' application for writ of mandamus to compel the clerk to accept the petitions. The court concluded that the ordinance was not subject to referendum on three grounds: (1) the exercise of municipal taxing power was limited under article 11, section 12 of the Washington State Constitution to legislative bodies and was not a power vested in the electorate; (2) the ordinance was administrative rather than legislative in nature; and (3) the ordinance was exempt from referendum under article 2, section 1(b) of the Washington State Constitution as necessary to support state government. The case was certified to this court by the Court of Appeals on the issue of whether or not ordinance C–25792 is subject to referendum. We disagree with each of the trial court's conclusions and reverse.

The facts of this case are not in dispute. Ordinance C–25792 was passed in 1980. It is a license tax for the purpose of revenue upon all occupations and trades and all and every kind of business authorized by law to be made subject to a municipal B & O tax. The ordinance levies a tax for the act or privilege of engaging in business activities in amounts to be determined by application of the rates set forth in the ordinance to the gross income of the business. The ordinance was enacted by the Spokane City Council by a vote of 7 to 3. A month later, the ordinance was amended by ordinance C–25832.

Prior to passage of ordinance C–25792 in 1980 no such tax, with one exception, had been imposed on all businesses; the exception was in 1971 when a broadly based B & O tax was imposed to provide funds for the Expo '74 World Exposition. This was expressly represented to the city voters as a "one–time tax". A license or occupation tax had been imposed by the City of Spokane on telephone, telegraph, electricity, steam, and communication companies since 1934.

Shortly after the enactment of ordinance C–25792, Citizens for Financially Responsible Government, an organiza-

tion composed of businessmen of the city of Spokane and other interested citizens, began circulating petitions calling for the repeal of the ordinance by the city council, or for a referendum election pursuant to section 83 of the Charter of the City of Spokane. These petitions, containing about 19,000 signatures, were delivered to the city clerk of Spokane for filing. The corporation counsel advised the city clerk that ordinance C–25792 was not subject to referendum, and that the petitions should therefore be refused for filing. Thereafter, Citizens for Financially Responsible Government sought a writ of mandamus directing the city clerk to accept the tendered referendum petitions.

## I

The first issue is whether the power to enact and repeal B & O taxes rests solely with the elected officials of Spokane or whether this power is shared with the electorate by means of referendum. We hold that the right of referendum for taxing ordinances is established in Spokane's city charter and this right is not restricted by any limitations contained in the Washington State Constitution or the general laws enacted by the state Legislature.

Article 1, section 4 of the Spokane City Charter provides:

All power of the city, unless otherwise provided in this Charter, shall be exercised by the mayor, city council and city manager. They shall be subject to the control and direction of the people at all times by the initiative, referendum and recall provided for in this Charter.

Article 9, section 83 of the Spokane City Charter sets forth the procedure to be followed in subjecting an ordinance to the referendum process.[1] The charter is perfectly clear. No

---

[1]Article 9, section 83 states:

"Referendum: If, prior to the date when any ordinance shall take effect, a petition signed by qualified electors equal in number to 10 per centum of the entire vote cast at the last preceding general municipal election, shall be filed with the clerk, protesting against the enactment of such ordinance, it shall be suspended from taking effect. Immediately upon the filing of the petition the clerk shall do all things required by section eighty–two (82) (b) of this article. Thereupon the council shall immediately reconsider such ordinance, and, if it do not entirely repeal the same, shall submit it to popular vote at the next municipal

limitations on the right to referendum are specified therein or in other sections of the charter. Citizens for Financially Responsible Government followed the proper procedure in its attempt to file the petitions against ordinance C–25792. The City of Spokane contends, however, that the right to referendum in this context is limited by state law.

■■ The general rule is municipalities possess, with respect to taxation, only such power as has been granted to them by the constitution or the general laws of the state. 16 E. McQuillin, *Municipal Corporations* § 44.05 (3d ed. 1981). Where there is a conflict between a general law enacted by the state Legislature and any charter provision, the general law is superior to and supersedes the charter provisions. *State ex rel. Guthrie v. Richland*, 80 Wn.2d 382, 384, 494 P.2d 990 (1972). Our state laws do not, however, conflict with Spokane's referendum provisions.

RCW 35.22.280 enumerates the broad powers delegated by the Legislature to first class cities, stating in pertinent part:

> Any city of the first class shall have power:
>
> . . .
>
> (32) To grant licenses for any lawful purpose, and to fix by ordinance the amount to be paid therefor, and to provide for revoking the same . . .

Cities of the first class are also granted all of the powers that are granted by RCW Title 35 and those that are usually exercised by municipal corporations of like character and degree. RCW 35.22.570. Such grants of power to first class cities are to be liberally construed to carry out the objectives of RCW 35.22. RCW 35.22.900. Thus, there is clear legislative authority for cities to enact a tax such as that in ordinance C–25792. The authority to tax is given to the city in general, not exclusively to the legislative body. Therefore, we conclude the Legislature has not sought to limit the referendum right of citizens of first class cities in

---

election; or, the council, in its discretion, may call a special election for that purpose; and such ordinance shall not take effect, unless a majority of the qualified electors voting thereon at such election shall vote in favor thereof."

the context of taxing and licensing ordinances.

The City contends, however, that the Washington State Constitution prohibits referendums on taxes at the municipal level. It interprets article 11, section 12 of the constitution as limiting the power to tax to the legislative authorities of the city, *i.e.*, the mayor and city council, thus forbidding that this power be exercised directly by the people through their right to referendum. The City argues that the state constitution supersedes the general legislative grant of taxing authority and limits the taxation power to legislative bodies.

Article 11, section 12 of the Washington State Constitution states:

> The legislature shall have no power to impose taxes upon counties, cities, towns or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the *corporate authorities* thereof, the power to assess and collect taxes for such purposes.

(Italics ours.) The issue is whether the reference to "corporate authorities" is meant to restrict taxing power exclusively to legislative bodies or is a general reference to the corporate entity, including the electorate.

> This court has repeatedly recognized the distinction between a grant of authority by the legislature to a city as a corporate entity and to its legislative and other corporate authorities.

*State ex rel. Haas v. Pomeroy,* 50 Wn.2d 23, 25, 308 P.2d 684 (1957).

In the context of *statutory* interpretation, we have previously held that a city's "corporate authority", also referred to as a "legislative authority", means exclusively the mayor and city council. *State ex rel. Haas v. Pomeroy, supra* (construing the term "corporate authorities"); *State ex rel. Walker v. Superior Court,* 87 Wash. 582, 152 P. 11 (1915) (construing the term "legislative authority"); *Neils v. Seattle,* 185 Wash. 269, 53 P.2d 848 (1936) (construing the term "legislative authority"); *State ex rel. Bowen v. Krue-*

*gel,* 67 Wn.2d 673, 409 P.2d 458 (1965) (construing the term "legislative body"). Therefore, a statutory grant of power to a legislative authority does not generally permit delegation to the voters through an initiative or referendum. *Neils v. Seattle,* 185 Wash. 269, 277, 53 P.2d 848 (1936) and cases cited therein. Here, however, the statutory grant is to "[a]ny *city* of the first class". (Italics ours.) RCW 35.22.280. Therefore, this line of cases focusing on statutory grants of authority is not germane.

In a *constitutional* context, the phrase "legislative authority" has not been restrictively interpreted by this court. In *State ex rel. Linn v. Superior Court,* 20 Wn.2d 138, 155, 146 P.2d 543 (1944) we held that the phrase "legislative authority", as used in the constitutional provision being examined, "includes the voters acting by way of an initiative or referendum". In *Linn,* our cases which interpreted "legislative authority" otherwise were expressly distinguished:

> Several of our decisions . . . reviewed at length in *Neils v. Seattle,* 185 Wash. 269, 53 P. (2d) 848, refer to the phrase legislative authority, as used in the constitution and statutes of this state, as meaning the mayor and city council. *In none of these cases was the meaning or scope of these words, as contained in . . . the constitution . . . before the court for construction. . . .* The matter of the meaning of the phrase referred to, as contained in certain statutes, was before the court, but *statutes cannot control the constitution. . . . [T]he act of the people of a municipality in adopting a city charter and in amending the same are legislative acts,* and . . . that authority under the constitution remains in the people. *Obviously when the people perform a legislative act, they are exercising legislative authority.*

(Citations omitted. Italics ours.) 20 Wn.2d at 151. Thus, under *Linn,* even if the phrase "corporate authorities" in article 11, section 12 of our constitution is interpreted as meaning legislative authority and not the city as a corporate entity, the provision nonetheless permits voter action by way of referendum.

The Washington Constitution begins with the statement that:

> All political power is inherent in the people, and governments derive their just powers from the consent of the governed . . .

Const. art. 1, § 1. In light of this forthright commitment to democratic principles, we refuse to narrowly interpret article 11, section 12 for the purpose of restricting the people's right to referendum.

Other jurisdictions have also reached the conclusion that a grant of power to a legislative authority does not negate the people's right to referendum. As articulated by the California Supreme Court:

> It was doubtless recognized by the framers of the constitution, as it must be by every one, that in the conduct of municipal affairs, it would be impracticable to do without the presence of a local legislative body of some kind, which should possess such powers in that behalf as might be granted to it, and that such a body would exist in every municipality. *The words "legislative authority" . . . were not intended to define the powers of that body, or place it in a position where it would be beyond restrictions by the organic act of the city.*

(Italics ours.) *In re Pfahler*, 150 Cal. 71, 89, 88 P. 270 (1906), *cited with approval in State ex rel. Linn v. Superior Court, supra* at 151–52.

*Linn* stands for the basic proposition that a constitution should not receive too narrow or too literal an interpretation, but should be construed to give effect to the manifest purpose for which it was adopted. *Linn,* at 143–45; *see generally* 16 C.J.S. *Constitutional Law* § 16 (1956). The focus of article 11, section 12 is to restrict the *State* from imposing taxes on municipal corporations or inhabitants or property therein, for municipal purposes. Its focus is not the designation of a particular municipal entity as the exclusive taxing authority.

In sum, article 11, section 12 of the constitution does *not* restrict the right of referendum in the context of taxing ordinances passed by municipal, legislative authorities.

Consistent with this fact, the state Legislature delegated taxing powers to "any city", not exclusively to a legislative body. RCW 35.22.280. Furthermore, Spokane's charter subjects "all power of the city" to the direction of the people by referendum. Hence, the people's right to referendum in this situation is unrestricted by any of these authorities. Our holding is virtually dictated by the language of the charter.

## II

Next, it is contended that ordinance C–25792 embodies an administrative, not a legislative act, and is therefore not subject to referendum. The rule is that the referendum power extends only to matters legislative in character and not to merely administrative acts. *Leonard v. Bothell,* 87 Wn.2d 847, 557 P.2d 1306 (1976); *Ruano v. Spellman,* 81 Wn.2d 820, 505 P.2d 447 (1973); 5 E. McQuillin, *Municipal Corporations* § 16.55 (3d rev. ed. 1981). In distinguishing between the two, several criteria have been used:

> Actions relating to subjects of a permanent and general character are usually regarded as legislative, and those providing for subjects of a temporary and special character are regarded as administrative.

5 E. McQuillin, § 16.55, at 194. Another test has been whether the proposition is one to make new law or to execute law already in existence.

> The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.

5 E. McQuillin, § 16.55, at 194; *Durocher v. King Cy.,* 80 Wn.2d 139, 152–53, 492 P.2d 547 (1972); *Ruano v. Spellman, supra* at 823.

Under either of these tests, ordinance C–25792 is legislative in character. Whereas the 1971 tax on all businesses for the specified purpose of raising funds for Expo '74 was designated as a "one–time tax", this ordinance was

not similarly limited. As it applies to all businesses, its general and more permanent nature cannot reasonably be questioned.

Moreover, under the second test, ordinance C–25792 cannot be viewed as an execution of a policy already in existence. The ordinance never refers to an existing policy. The title and the language of the ordinance are phrased as a new law. For example, a key provision states:

> There is hereby levied upon and there shall be collected from every person as hereinafter provided, for the act or privilege of engaging in business activities, a tax
> . . .
> . . . [u]pon every person engaging within the City in business . . .

Ordinance C–25792, § 8.11.140(a).

Common sense compels the conclusion that a tax on *all* business is a new policy, not simply an extension of a tax levied solely on utility companies. Were this not true, a municipal body could enact a tax applicable to a minute sector of the population, then later greatly expand its application and effectively circumvent any meaningful right of referendum by the people.

The City's argument that the ordinance only modifies the *method* used to collect the tax, and therefore is administrative in character, is unsupportable. As stated above, the tax reflects a new policy of imposing a B & O tax on all businesses. Moreover, a change in methodology may in fact represent a new policy and be characterized as a legislative act. *Cf. Ballasiotes v. Gardner,* 97 Wn.2d 191, 642 P.2d 397 (1982) (conversion and funding of voting system from lever machines to punch card voting/computer tallying system, held by a plurality to be legislative in character). In short, the enactment of this ordinance was a legislative act under any applicable test.

### III

It is also contended that this ordinance is exempt from referendum by article 2, section 1(b) of the Washington State Constitution. This provision exempts from the power

of referendum

> such laws as may be necessary for the immediate preservation of the public peace, health or safety, [or] support of the state government and its existing public institutions . . .

Const. art. 2, § 1(b).

■ Article 2, section 1(b) exempts from referendum those laws necessary for the support of *state* government, not municipal government. Therefore, by its terms, this exemption is not applicable to ordinance C–25792, which exacted a tax to provide revenue to the municipality of Spokane. Moreover, the purpose of article 2 is to define the legislative, initiative and referendum powers of *state* government; there is no evidence of any intent by the framers of the constitution that it be applied to other levels of government. *See* Const. art. 2, § 1. Cases construing this provision have been limited to those concerning the state budget or state agencies. *See, e.g., State ex rel. Helm v. Kramer,* 82 Wn.2d 307, 510 P.2d 1110 (1973); *State ex rel. Blakeslee v. Clausen,* 85 Wash. 260, 148 P. 28 (1915). In contrast, the purpose of ordinance C–25792 was to raise revenue for the support of the City of Spokane not the State of Washington. Therefore, article 2, section 1 has no application here.

Spokane's city charter does not have a similar "support of government" exception to the right to referendum. Instead, it states that

> All power of the city . . . exercised by the mayor [or] city council . . . [is] subject to the control and direction of the people at all times by . . . referendum . . .

Spokane City Charter art. 1, § 4. This grant of referendum power over municipal actions is unequivocal and without exception.

## IV

■ Two other issues raised by the City deserve a brief analysis. First, it is contended that the signatures on the referendum petition were not properly certified; therefore,

even if the right to referendum existed, the deficiencies in the petition would preclude exercise of the right in this instance. This issue was not raised at trial. Instead, the matter was presented to the court as a joint motion for summary judgment, and the court specifically found there were no issues of material fact. The trial court also found counsel had agreed that the sole issue before the court would be the right of referendum. Given these findings, we refuse to consider the issue on appeal. *See Beggs v. Pasco,* 93 Wn.2d 682, 611 P.2d 1252 (1980); *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 588 P.2d 1308 (1978).

Second, the City claims the amendment of ordinance C–25792 by ordinance C–25832 renders the referendum issue moot. This claim is also raised for the first time on appeal. It must be considered, however, because it is directed at the jurisdiction of the court, and this issue may be raised at any time. CR 12(h)(3). As a general rule, we will not review a question that has become moot. *Rosling v. Seattle Bldg. & Constr. Trades Coun.,* 62 Wn.2d 905, 385 P.2d 29 (1963).

■ We do not believe, however, that this issue is moot. The City relies on *Yakima v. Huza,* 67 Wn.2d 351, 407 P.2d 815 (1965) for the proposition that once an ordinance is amended, the issue of a referendum pertaining to the original ordinance is moot. Such an interpretation of *Huza* is much too broad, however. In *Huza,* the "amending" ordinance was complete in itself, it made no reference to the previously enacted ordinances which were the object of the initiative, and its effect was to repeal the ordinances under attack. Thus, the amendment eradicated the subject of the referendum. In contrast, ordinance C–25832 is not an independent act, but simply an amendment to portions of ordinance C–25792. Unlike the ordinance in *Huza,* this second ordinance cannot stand alone and it does not repeal the first. Therefore, the passage of ordinance C–25832 did not render the referendum issue moot.

Moreover, we find persuasive the dissent's argument in *Huza* that a repealing and reenacting procedure by a legis-

lative body should not be allowed to frustrate the initiative/ referendum process. *Yakima v. Huza, supra* at 362 (Hill, J., dissenting). Because we distinguish *Huza* on its facts, and it should be limited to its facts, it is not necessary to reconsider its holding at this time. We note, however, that deliberate efforts by a legislative body to circumvent the initiative or referendum rights of an electorate will not be looked upon favorably by this court.

■ Finally, even if this case were moot, we consider the issue of the right of referendum over taxing ordinances enacted in the face of the Spokane charter language and comparable situations to be a matter of continuing and substantial interest and one presenting a question of a public nature which is likely to recur. Given these considerations, review is proper. *See Alderwood Assocs. v. Washington Envtl. Coun.*, 96 Wn.2d 230, 635 P.2d 108 (1981); *In re Patterson*, 90 Wn.2d 144, 579 P.2d 1335 (1978).

The trial court is reversed and the application for writ of mandamus ordering the City of Spokane to accept plaintiffs' referendum petitions is granted.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, and DIMMICK, JJ., concur.

DORE, J. (dissenting)—I believe the enactment of the City of Spokane's business and occupation tax ordinance C–25792 is not subject to referendum, as it is an administrative act. Additionally, the ordinance falls under the "support of government" exception to the referendum power. For these reasons, I dissent.

The general rule is that the right to act directly through referendum is not an inherent power of the people, such that the referendum power extends only to matters legislative in character as compared to administrative actions. *Leonard v. Bothell*, 87 Wn.2d 847, 557 P.2d 1306 (1976); *Ruano v. Spellman*, 81 Wn.2d 820, 505 P.2d 447 (1973). The criteria for determining when an act is administrative or legislative in nature are:

Several criteria have been suggested for determining whether an act is legislative or administrative. One such is whether the subject is of a permanent and general character (legislative) or of temporary and special character (administrative). 5 E. McQuillin, *Municipal Corporations* § 16.55 (3d ed. rev. 1969). We believe a preferable standard, at least for this case, to be *whether the proposition is one to make new law or declare a new policy, or merely to carry out and execute law or policy already in existence. People v. Centralia,* 1 Ill. App. 2d 228, 117 N.E.2d 410 (1953); *Heider v. Common Council,* 37 Wis. 2d 466, 155 N.W.2d 17 (1967).

(Italics mine.) *Ruano,* at 823–24.

Another test, cited by the majority at page 347, is whether the ordinance makes new law or merely executes law already in existence.

The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.

5 E. McQuillin, *Municipal Corporations* § 16.55, at 194 (3d rev. ed. 1981); *Durocher v. King Cy.,* 80 Wn.2d 139, 152–53, 492 P.2d 547 (1972).

Ordinance C–25792 does not adopt a new tax policy or program for the City of Spokane, but merely expands a policy already in existence. The City of Spokane has been collecting a business license tax on all businesses within the corporate limits of the city since 1968. This ordinance is not a new tax bill. In effect, the ordinance reintroduced the same tax but increased the rates on all businesses except utilities by extending the percentage–of–gross–proceeds method to these businesses. Although the initial passage of the business and occupation tax ordinance previously may have been subject to referendum, the current ordinance modifies the *method* used to collect the tax. The passage of the ordinance was, therefore, an administrative rather than legislative action and, as such, is not subject to referendum.

Even if the ordinance could be classified as a "legislative" action, however, it falls under the "support of government"

exception to the referendum power.

Article 2, section 1(b) of our state constitution excepts from the power of referendum "such laws as may be necessary for the immediate preservation of the public peace, health or safety, [or] support of the state government and its existing public institutions, . . ." A city of the first class has legislative powers as broad as those granted under article 2, except when restricted by the general laws of the state. Const. art. 11, § 10 (amend. 40); *Winkenwerder v. Yakima,* 52 Wn.2d 617, 328 P.2d 873 (1958). Thus, the limitations the people of the state of Washington have placed upon their own right of referendum also apply to enactments of the City Council of the City of Spokane.

The corporate authorities of municipal government have a responsibility to support the institutions previously enacted. *State ex rel. Blakeslee v. Clausen,* 85 Wash. 260, 148 P. 28 (1915). Without the business and occupation tax funds, the operations of the city government of Spokane would be financially weakened, if not jeopardized. Even if the passage of ordinance C–25792 were to be construed as legislative in character, the funds are necessary to support the City's government.

As I have concluded the ordinance should not be subject to referendum, I would affirm the trial court.

Reconsideration denied June 20, 1983.